## LEONARD v. MIAMI MIN. CO.

(Circuit Court of Appeals, Fourth Circuit. November 8, 1906.)

### No. 657.

1. NEGLIGENCE—EVIDENCE TO ESTABLISH.

An inference of negligence cannot be based on a presumption nor on speculation and conjecture.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 217.]

2. MASTER AND SERVANT—INJURY TO SERVANT—PROOF OF NEGLIGENCE.

Plaintiff's intestate was employed as a miner in defendant's mine, which had a 600-foot shaft having two compartments; one used as a bucket way, and the other for a ladder. He had just come to the top in the bucket, when, while being lowered again for other miners, the bucket broke from the rope and stuck at one of the intermediate levels. In order to free it so that another bucket could be sent down, deceased went alone down the ladder. He reached the level where the bucket was and removed it from the shaft, and his body was afterward found at the foot of the shaft at a lower level. There was no evidence to show how or why he fell, and the ladder was in good condition. Held, that no inference of negligence on the part of defendant could be drawn from the fact of the accident, nor could liability be based on any defect in the bucket shaft, which may have caused the falling of the bucket, but had no connection with the subsequent accident to deceased, and that the court properly directed a verdict for defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 881.]

In Error to the Circuit Court of the United States for the Western District of North Carolina.

Rufus E. Austin and Thomas J. Jerome (Adams, Jerome & Armfield, on the briefs), for plaintiff in error.

W. G. Means, for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

GOFF, Circuit Judge. The intestate of the plaintiff in error was killed by falling down the shaft of a mine owned and operated by the defendant in error. The shaft was about 600 feet deep, with a number of levels connected with it. At the 520-foot level there was a telephone, while at the other levels the method of communication between those in the mine and those at the mine opening was by a gong attached to a wire rope which passed down the shaft. There were two compartments to the shaft; one used as a bucket way, and the other for a ladder. A large bucket used for hoisting ore and the parties working in the mine was run in one compartment, while the ladder was used by the workmen when the bucket was not in use. On the 5th day of January, 1905, Fred. A. Leonard, a laborer in the mine, had been with others hoisted in the bucket to the surface. The bucket was then again started down the mine for the purpose of bringing up others who were at the 520-foot level, when it became detached from the wire rope with which it was being lowered, and, tumbling down the way, which was built on an incline of about 45 degrees, lodged at the 250-foot level. Another bucket was then attached to the rope and lowered, but those in charge of the work were unable to get it below the 250-foot point. In order to open up the shaftway, so that the men at the lower level could be reached with the bucket, Leonard started down the ladderway for the purpose of removing from the shaft the detached bucket. Soon after he so started he was picked up by those at the 520-foot level, mangled and dead. The plaintiff below charged the defendant with negligence; the declaration alleging that the bucket way was improperly constructed, that the skids of the shaft on which the bucket ran were old, weak, and imperfectly fastened, that the hook to which the bail of the bucket was affixed was unsafe, dangerous, and defective, that the gong rope was improperly placed in the bucket way, and that the gong was rung with great difficulty. Every allegation of the complaint charging negligence was specifically denied. The case was tried to a jury, which by direction of the court below returned a verdict for the defendant, on which judgment was duly entered.

Did the court below err in so directing a verdict? Did the testimony offered to the jury show negligence on the part of the defendant? Can we find from the evidence what caused the accident by which Leonard lost his life? Was any fact established by the testimony from which negligence was directly attributable to the defendant, or could have been fairly inferred therefrom? An accident was shown to have occurred, most deplorable in its results, during which the deportment of the decedent was courageous and entitled to the high commendation it received; but such accident under the law raised no presumption of negligence on the part of the defendant. The burden of proof was on the plaintiff, who it seems lacked testimony relating to the material facts connected with the accident, and was driven to the necessity of asking the jury to infer negligence, because an accident had happened and death had resulted therefrom. But such is not the law, for the in-

ference of negligence cannot be drawn from a presumption, nor based on speculation and conjecture. In cases of this character, if the testimony is equally consistent with the existence or nonexistence of negligence, the trial judge should direct a verdict, and not submit the question to the jury. The plaintiff in error did not offer any evidence from which the jury could reasonably infer that the accident was caused by the negligence of defendant in error. Had such been the case, then, in the absence of explanatory testimony, the defendant in error might have been liable, and the jury should have been permitted to pass on the question. In order to sustain the contention of the plaintiff in error, we must presume that Leonard was, at the time the accident occurred, free from fault and exercising due care, and then, in addition, presume that he met his death because of some defect in the construction of the shaft or of the machinery used in it. A case should not be sustained when it depends upon a presumption that is itself founded upon conjecture.

It was Leonard's duty to work a machine located on one of the mine levels near the bottom of the shaft. His employment had no connection with the operation of the buckets; but he, when they were disarranged and the shaft was blocked, in order to relieve his fellow workmen, of his own volition, with good intent and most commendable purpose, went down the ladder to the level where the bucket blocked the way. That he reached that point safely is certain, for he removed the bucket, which was found in the level. He was then in a place of safety, at a point in the shaft where there was no defect either in the plan of construction or method of operation. What then happened? The shaft at that point was as usual, and the ladder was in a safe condition. He could have gone either up or down without additional or unusual risk. What did he attempt to do? The evidence does not show, and we do not know. He fell to the bottom of the shaft, taking with him the mystery of the accident that caused his death. Did he lose his balance and fall, did he become faint and weak, did he slip and fail to recover his grip, did he endeavor to ring the gong and fall when doing so? We search the evidence in vain for an answer to any of these questions. The suggestion that the shaft was improperly built, and that the timbers in some parts of it were weakened and defective is without force, for we find no connection between the mishap to the bucket when it became loose in the shaft, and the accident to Leonard which occurred some time thereafter. In the absence of testimony showing negligence, the defendant in error should not be held responsible for the deplorable and extraordinary circumstances transpiring in     ft of this mine when Leonard lost his life.

We find no error.

Affirmed.