### MACAULAY v. ALASKA GASTINEAU MINING CO.

(Circuit Court of Appeals, Ninth Circuit. August 7, 1916.)

No. 2695.

MASTER AND SERVANT ☞211—ASSUMPTION OF RISK.

> A member of a crew engaged in driving an uplift in a mine, which work was prosecuted in a good and workmanlike manner, assumed the risk of the falling, before and while being removed, of fractured portions of the rock which necessarily remained, after a blast, to be removed or barred down by hand.
>
> [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 557; Dec. Dig. ☞211.]

In Error to the District Court of the United States for the First Division of the District of Alaska.

Action by John Macaulay against the Alaska Gastineau Mining Company. Judgment for defendant, and plaintiff brings error. Affirmed.

J. H. Cobb, of Juneau, Alaska, for plaintiff in error.

Shackleford & Bayless and Z. R. Cheney, all of Juneau, Alaska (Rufus Thayer, of San Francisco, Cal., of counsel), for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The plaintiff in error brought this action in the court below to recover damages for an injury received by him while working in the defendant's mine near Juneau, Alaska. At the time of the accident an upraise was being made from the tenth to the ninth level of the mine, in which work the usual method was being pursued; that is to say, the upraise was being made by a power drill operated by two men. The upraise was on an incline of about 65 de-

grees, and had been extended about 90 feet from the tenth level. There was a short intermediate drift from this particular raise connecting with a stope to the east for purposes of ventilation, in which drift there was placed a small hand winch, which was used for drawing the necessary ladders up from below to be used in the prosecution of the extension of the upraise. The evidence shows without conflict that the upraise was being driven in the usual and miner-like way, in the prosecution of which work the operators of the drills, after drilling holes in the face of the upraise and inserting the explosives, shot them, thus breaking down the rock and fracturing some that for safety had then to be pried down before commencing to drill the next round of holes.

In the upraise opposite the short drift that has been mentioned was placed a bulkhead composed of timbers, below which the upraise consisted of two compartments extending down to the tenth level, one the manway, in which were the ladders to be hoisted, and the other the chute for the ore and rock. In the driving of the upraise in question a day and a night shift were employed, the shift going off duty firing the last holes drilled by it before leaving, and the next shift when coming on duty first barring down from the face and sides of the upraise all loose rock and material, and also cleaning from the ladders and the sides of the upraise all such broken rock and débris before commencing drilling another set of holes. This the evidence shows was not only the course of procedure in the driving of the upraise in question, but the usual and proper method of making such upraise in mining, the purpose of course being to eliminate as far as possible the danger resulting from the falling of broken and loose rock. Necessarily in the prosecution of all such work there was and is more or less danger. In its prosecution ladders were necessarily used to enable the miners to go up and down in the putting in the necessary temporary timbers on which to place the drilling machine and on which to stand while drilling; and additional ladders as a matter of course as the upraise was extended.

The accident in question happened on a night shift, which consisted of two drillers and two ordinary underground laborers called muckers, the duty of the latter being, as the evidence shows, to remove the ore and rock knocked down by the drillers, to help raise and handle the ladders, and to do such other underground work as the foreman or boss should direct. When this night shift came on the two drillers went up the ladders as usual, knocked down all of the loose rock and material caused by the shots of the preceding shift as far as they could reach from the ladders then in place, but needing more ladders to reach the face of the upraise went down those in place to procure others, in which work the two muckers were directed to assist them. The plaintiff in error, who was plaintiff in the court below, was one of the muckers, and he commenced helping one of the drillers to clean off the bulkhead and remove the timbers therefrom, so that the needed additional ladders could be hauled up from below through the manhole; the other driller and the other mucker went down the manhole to attach a cable to the ladders, which were to be hauled up by means of the winch in the drift that has been mentioned. That winch was in the

drift, and but a few feet from the upraise. The plaintiff and the one driller who was working with him, after cleaning off the bulkhead and removing the timbers therefrom so that the ladders could be drawn up, took position in the drift a little way from the upraise, the plaintiff standing and the driller stooping in order to see when the cable was attached to the ladder and to give notice when to commence hoisting it. In this condition of affairs two comparatively small rocks fell down the upraise, bounding from side to side as the upraise was inclined, and one of them entered the drift, striking one of the legs of the plaintiff in error and breaking it. And that is the ground of the action.

The evidence, which we have attentively read in type (the court having dispensed with the printing of the record on motion of the plaintiff in error), is without substantial conflict, and shows the facts that have been above detailed. The court below directed a verdict for the defendant, upon which judgment was accordingly entered, and the cause has been brought here by the plaintiff, it being contended on his behalf that it should have been submitted to the jury for decision.

We do not think so, as we find no evidence of any negligence on the part of the defendant. On the contrary, it shows without conflict that the work in question was prosecuted in a good and miner-like way, and that the dropping of the rock which unfortunately struck the plaintiff in error was one of the incidents which at times is unavoidable in the best-regulated mines; for it is obvious that no upraise can be driven without blasting the rock, some fractured portions of which necessarily remain to be removed or barred down by hand. All engaged in such work are necessarily exposed to more or less danger of its falling before or while being removed, which danger they legally assume.

The judgment is affirmed.