## WADDELL v. A. GUTHRIE & CO.
### No. 265.

Circuit Court of Appeals, Tenth Circuit.

Dec. 23, 1930.

D. M. Draper, of Salt Lake City, Utah (Samuel R. Thurman and Allen G. Thurman, both of Salt Lake City, Utah, on the brief), for appellant.

Paul H. Ray, of Salt Lake City, Utah (E. M. Bagley and Robert L. Judd, both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

In this action for personal injuries, the court directed a verdict for the defendant at the close of all the evidence. Whether there was error in so doing is the only point presented on this appeal.

978

The amended complaint sets out that the plaintiff was a rodman in the employ of the Bureau of Reclamation of the United States; that the defendant was engaged, under contract with the United States, in the construction of an outlet tunnel of the Echo Dam, a federal reclamation project in Utah; that plaintiff's duties required his presence in the tunnel; that, while properly in the tunnel, the roof gave way and seriously injured him; that defendant was negligent in failing to timber or support the roof; that such roof was in a dangerous condition, as defendant either did or should have known.

There was little conflict in the evidence on the trial. The tunnel was 838 feet in length, 13 feet in height, and 20 feet in width; it was a water tunnel, and somewhat oval-shaped. Construction was started from both ends in March, 1928; it was bored through on May 30; the trimming was completed June 20; later the tunnel was lined with cement. On June 26, while plaintiff was rightfully in the tunnel, a large chunk of the side wall sloughed off from a point about 5 feet above the floor of the tunnel; the material so sloughing was a red sandstone, some fine and some coarse, and one large rock, about a half-cubic yard in content, about 18 inches thick, somewhat wedge-shaped. There had been a clay seam back of the rock, which was not discernible when the rock was in place; the size of this rock was such that the sounding, hereafter described, would not and did not disclose the presence of the seam.

The tunnel was constructed by drilling 7-foot holes into the face of the rock; the workmen withdrew, the holes were shot; after the fumes cleared away the workmen returned, and, when 50 or 60 feet from the face, the roof and walls of the tunnel were sounded to determine their safety; this sounding was done by tapping with a metal bar; if a "drumming" sound resulted, the looseness thus indicated was scaled down until the workmen believed it safe to proceed; at places, where conditions indicated, the tunnel was timbered. By this method the roof and walls were inspected seven or eight times—50 or 60 feet divided by 7, the length of the drill holes. All of the evidence disclosed that this was the customary and ordinary method of inspection used by tunnel builders, and it is not claimed that the defendant's employees were incompetent, or that they were not equipped with efficient tools. There was no timbering at the point of the accident, and no substantial evidence that any condition indicated a need for such.

There was no evidence of any inspection after the tunnel was bored through, and no evidence that such a subsequent inspection was customary, necessary, or helpful; nor was there evidence that any inspection would have disclosed the clay seam back of the large rock, which very apparently was the cause of the accident. The efficiency of the inspection is indicated by the fact that no other sloughing occurred anywhere in the tunnel during its entire construction, even when the cement for the lining was applied with great force by compressed air. The evidence discloses that what timbering was done proved unnecessary.

The tunnel was bored through a soft sandstone and shale formation, with irregular clay seams; a geological examination indicated that the formation was a loose one; water appeared over the face of the tunnel in small seeps, and there was a water spring near the floor line of the tunnel, about ten feet downstream from the place of the accident. When the tunnel was bored through it was dry, excepting for this spring, and some moisture at an enlarged chamber 140 feet upstream from the place of the accident. While the effort is to blast out the rock as nearly as possible to the desired dimensions, or neat line, the effect of the blasting is irregular, and leaves projections inside the neat line which must be trimmed, and "overbreaks" or cavities outside the neat line which must be filled with cement. One of these overbreaks was in the roof at the scene of the accident.

There is no dispute about the law governing the case. The plaintiff may recover if there was negligence on the part of the defendant, and not otherwise. White v. Chicago G. W. R. Co., (C. C. A. 8) 246 F. 427; Leonard v. Miami Min. Co. (C. C. A. 4) 148 F. 827. Any conflicts in the testimony must be resolved in favor of plaintiff; when that is done, if there is any substantial evidence of negligence, the case must be submitted to the jury; if there is no such substantial evidence, as distinguished from a mere scintilla, the court should direct a verdict. Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Woolworth v. Davis (C. C. A. 10) 41 F.(2d) 342, 347.

There are inescapable hazards connected with the construction of tunnels, as there are in mining and in the erection of bridges and great buildings. Those engaged in such work are not insurors against ac-

cident; they are obligated to take such precautions, and make such inspections, as experience has taught are necessary. The rule of law is aptly and succinctly stated by Judge Walter H. Sanborn in Canadian Northern Ry. Co. v. Senske (C. C. A. 8) 201 F. 637, 642, as follows:

"These authorities, and a multitude more, sustain the established rule that the standard of ordinary or reasonable care is that degree of care (1) which ordinarily prudent persons, (2) engaged in the same kind of business, (3) usually exercise under similar circumstances."

In that opinion, the learned judge has gathered so many controlling authorities in support of his statement that further citation is needless. However, the Sixth Circuit (Judges Lurton, Severens, and Richards sitting) used language peculiarly appropriate to the case at bar, when it is remembered that there is no evidence that any inspection would have disclosed the clay seam back of the big rock which caused the accident. The case is Shankweiler v. Baltimore & Ohio R. Co., 148 F. 195, 197, and the language is:

"The box car on which the rod broke was in course of transportation, and there is no question but that the inspection made was all that is customarily made by well-regulated and prudently conducted railroads. Against such an inspection, the defect was latent, undiscoverable. We think it would be going too far to say that, because the inspection did not disclose the defect, it was not a proper one and ordinary care required something more. * * * The court could not have properly permitted the jury to indulge in mere speculation, finding the railroad company guilty of negligence, because, although it used the ordinary method of inspection, it did not use this method suggested by one person or that method suggested by another, when there was an utter lack of testimony showing or tending to show that either had ever been used by any prudently conducted company, or, if used, would prove effectual."

See, also, for a striking parallel, Snapp v. Steinbaugh, 187 Ind. 701, 121 N. E. 81.

▆ The undisputed evidence in this case is that the defendant followed the customary and usual method of inspection; that it timbered wherever such inspection indicated a need therefor. The care which it used is attested by the fact that, even in the presence of the pressure from the air-driven cement, no other slough ever occurred.

Counsel urge that there should have been an inspection after the tunnel was bored through, since the tunnel was then subjected to atmospheric conditions for the first time. It is an ingenious theory, but there is no evidence to support the proposition that such inspection is either customary or helpful. The presence of water, the looseness of the soil, the softness of the rock, are commented on. These conditions may require more timbering, or more careful inspection, than in solid rock; but there is no evidence that they require more timbering or more inspection than defendant used. One of plaintiff's witnesses testified that he examined the scene of the accident immediately after the accident, and that usually in conditions such as he then found stulling or timbering would have been placed. The suggestion of this witness as to the desirability of timbering was predicated partly, if not entirely, upon an overbreak in the roof of the tunnel at this point. He testified that such overbreak "tended to dislocate your crown arch and make your rock more liable to fall." But the sloughing which injured plaintiff was not from the roof, or the crown arch, but from a point about eight feet below the roof. There is no evidence that the crown arch was ever dislocated, or that the overbreak at this point, which was one of many in the tunnel, contributed at all to the accident; the physical facts indicate the contrary. But he likewise testified he had not examined the place of the accident before the accident. Furthermore, this witness was the supervising engineer for the government, in charge of all the government employees, and was in the tunnel every day, and never suggested the need of additional timbering. In the face of the clear and convincing testimony offered, and the physical facts heretofore referred to, we conclude, as did the trial court, that this observation of the witness, without supporting facts, is not sufficient to carry the case to the jury.

The plaintiff was without fault, and he has suffered serious injury; the accident was deplorable, but we can see no evidence of negligence on the part of the defendant, and, without that, the pecuniary loss which the plaintiff has suffered cannot be shifted to the defendant. The situation is not dissimilar to that confronting the Ninth Circuit Court of Appeals in Macaulay v. Alaska Gastineau Mining Co., 234 F. 611, which court answered the contention that the question should have been left to the jury by saying, at page 613:

"We do not think so, as we find no evidence of any negligence on the part of the defendant. On the contrary, it shows without conflict that the work in question was prose-

cuted in a good and miner-like way, and that the dropping of the rock which unfortunately struck the plaintiff in error was one of the incidents which at times is unavoidable in the best-regulated mines; for it is obvious that no upraise can be driven without blasting the rock, some fractured portions of which necessarily remain to be removed or barred down by hand. All engaged in such work are necessarily exposed to more or less danger of its falling before or while being removed, which danger they legally assume."

The judgment is affirmed.