## UNITED STATES v. RASAR.

### No. 6205.

Circuit Court of Appeals, Ninth Circuit.

Nov. 10, 1930.

Anthony Savage, U. S. Atty., and Tom De Wolfe and Cameron Sherwood, Asst. U. S. Attys., and Lester E. Pope, Regional Atty., U. S. Veterans' Bureau, all of Seattle, Wash. (William Wolff Smith, General Counsel, and Bayless L. Guffy, Edward I. Burns, and C. L. Dawson, Sp. Attys., U. S. Veterans' Bureau, all of Washington, D. C., of counsel), for the United States.

Graham K. Betts, of Seattle, Wash., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and WEBSTER, District Judge.

WEBSTER, District Judge.

Appellee recovered judgment in the court below on a policy of war risk insurance, and the government appeals. The sole question for determination is whether there was sufficient evidence offered at the trial tending to prove total and permanent disability during the life of the policy. Appellee enlisted in the Marine Corps on February 20, 1918, and served therein until he was honorably discharged, on April 14, 1919. The policy of insurance in suit expired on July 1, 1919, for nonpayment of premium. The complaint alleges that appellee was totally and permanently disabled at the time of his discharge from the service by reason of wounds received while serving in France with the American Expeditionary Forces. It appears from the record that on August 8, 1918, appellee, while engaged in active combat, sustained serious and permanent injuries as the result of

546

exploding shrapnel. He was shot through the right arm four times, one shot passing through his lung and penetrating the liver. One shot entered his left knee and another his right leg. He was taken to the hospital, where four pieces of bone were removed from his arm and one piece from his right leg. For seventy-four days he was compelled to lie on his back, and it seems that he remained in the hospital until the date of his discharge, on April 14, 1919. Since his discharge he has undergone between thirty and forty operations on his arm. Whenever he subjects the injured member to any considerable exertion or strain it swells up, pus forms, and an operation becomes necessary. Particles of bone slough off and have to be removed from time to time. After an operation the incision heals slowly and appellee can then use the arm for a short period. If, however, the arm is put to any considerable use, the swelling and pus reappear and another operation is required. Dr. Ristine, a physician testifying in behalf of appellee, describes his injuries as follows:

"With reference to the shrapnel wounds, there is a four-inch vertical scar that runs from the middle of the calf on the right leg upwards. That does not seem to involve any bone, and no X-ray was taken. There is also a four-inch scar on the inner side of the left patella of the right knee. On manipulation of the patella we get a grating, on which an X-ray was taken. I have the X-ray here. It shows that there was a cartilage taken out. It shows an extra formation of bone on the inner side of the lower end of the femur or thigh bone at the knee joint. That is what the X-ray shows on that. The man has four irregular scars on the forearm and just above the elbow of the right arm and has limited motion of the arm. * * * My diagnosis of the case as to the right arm, the left knee and the right leg is that he has osteomyelitis and limitation of motion of the right arm. He has periostitis. Osteomyelitis is an inflammatory condition of the bone. Periostitis is an inflammation of the covering of the bone. Osteomyelitis exists in the arm only. Periostitis in both arm and leg. Any activity would aggravate the condition of the arm or the legs. I mean any motion. The greater the motion the greater the degree of disability, and if the leg is not set just right it will have a tendency to go out. The effect of the aggravation of the disability may re-excite and set up this inflammatory condition and bring it back to another operation. * * * It is permanent. By looking at the history I would say that the condition started follow-

ing the injury. He is totally disabled from following continuously any gainful occupation."

On cross-examination the witness testified:

"I would emphatically say that he could not carry on continuously in any gainful occupation. If it was a matter of sitting down, if his education was sufficient, and if it required sitting he could follow some line of clerical work or occupation. As far as his physical condition is concerned it would have to be that type of work, any type that would not have violent exertion, if his education would permit."

Dr. Cleveland, another physician called as a witness on behalf of appellee, testified:

"I have examined or treated Carl Rasar. I can't give the exact dates. He came in at different times. I haven't the dates. Several times he came in with a sore arm. For the last two or three years he has been coming in. * * * I made examinations of the leg and arm to see what was the matter. The leg shows a scar where he had evidently been operated on at the joint, and a smaller one—I think he had been injured by shrapnel and a part of this cartilage has been removed, which left his leg, under heavy exertion, weakened to that extent. Also the arm. He came in, and the arm—there were small pieces of bone removed from it. He complained of pain in his side, and there was nothing I could do there. Then on the left leg, that is scarred, just back of the shin bone —that is badly cut so that some of the smaller nerves do not function. It is not what we would call a paralysis of the motor senses, but it is a paralysis of the skin. He has a rarefied condition of the arm—of the bone, where the small pieces work out. That is pretty well up and down the arm. I should judge, a distance of about four inches. He has a good arm muscle. In fact, a powerful arm muscle, but the bone is rarefied. By rarefied I mean that from other disease or non-use of the bone there becomes less bony material in it, and when you put this into hard exertion it is apt to break, which will cause necrosis, which is a diseased condition of the bone of the arm, and with the muscles working over it—the muscle is fastened to the bone and pulls and causes the disease to become active again. The exertion of the muscles agitates the condition of the bone. It causes the arm to swell and become inflamed. * * * That condition will continue, I think, as long as he lives, under heavy exertion. Permanent. That condition con-

tinued with relation to the wound I found, ever since his injury took place, I think. I think he had an infection at the time of the injury, whenever that occurred, up until now. From my observation and treatment of the plaintiff, in my opinion his disability is total as to heavy work. By heavy work I mean where he would have to do heavy arm exertion or heavy lifting."

On cross-examination this witness testified:

"Yes, his disability is total as to heavy work, in my opinion. I should think this man is able to do all light work, clerical work, where he was not on his feet all day. Some work of that character he could do. I don't believe he could do garage mechanic work, where you have to do heavy work. Where he would have to do some heavy work, I don't believe the arm would stand it. But he could do any type of work that is not heavy, as far as any disabilities are concerned, except that he will tire in that leg if he has to stand on it. I would say that the man was not totally disabled so far as any lighter type of occupation was concerned."

The opinion of the physicians that appellee is not able to perform manual labor requiring any considerable exertion is amply borne out by the testimony. Repeated attempts to work under easy and favorable conditions were invariably followed by repeated failures. Appellee's arm would swell up until he could not put his shirtsleeve on, and more operations would become necessary. His leg would slip out of joint, and it seems clear that he worked in a constant state of pain and suffering. His labors at all times were irregular and intermittent. His employment as extra deputy game warden was the only work in which he engaged having any semblance of continuity, and this was extremely light work and for broken periods of time. The officer by whom appellee was employed in this work, and who frequently worked with him, testified:

"He was employed sometimes a week and sometimes maybe he would work a whole month—just like that. Off and on. He worked off and on because he was sick a part of the time and wasn't able to work. He had a lame leg and a bad arm. His duties were driving from place to place, delivering fish to different streams and to go along with a regular deputy. He was simply carried on the payroll. During the duck season, when the work was fairly steady, while he worked with me, he did not work very much of the day. Possibly two or three hours in the evening.

Something like that. He principally drove cars. He was employed by the game warden. I saw him drive the car and went with him on different occasions. When he drove a car very long, two or three hours, he complained about his leg. I noticed that he stretched himself and that he complained about his leg. I saw him get out and stretch his leg. He would be out a few minutes, and then he would be out again. I saw his arm on several occasions when it was swelled up, in bad shape, and saw the doctor operate. I could not answer as to how long it was from one swelling to another. They were quite frequent."

In United States v. Eliasson, 20 F.(2d) 821, 824, this court held that total disability does not necessarily imply incapacity to do any work at all, and in the course of the opinion it was pointed out that the work which the insured had performed "was intermittent and was continued only for brief periods, and invariably resulted in relapses which totally unfitted him for work." It was held that such unsuccessful efforts to work did not rebut an inference of total disability.

Unless the testimony of the physicians that appellee was physically able to do light work, clearly meaning clerical work, and notwithstanding the fact that appellee has neither education nor experience fitting him for such employment, precludes the conclusion of total disability, there seems to be nothing in the record upon which the government's claim of lack of evidence can be grounded. The appellee, prior to his enlistment in the military service, was a farmer, and his testimony gives unmistakable evidence that he is a man of very meager education. That he is utterly incapable of performing clerical work there can be no doubt. He has neither the education nor the training to qualify him for any such employment, nor is it possible for him at this period of life to fit himself for clerical work. It is worse than idle to speculate about the appellee being able to earn a livelihood in the performance of clerical duties. The government seems to have recognized this fact, for when it undertook the rehabilitation of the appellee it endeavored to train him in automobile mechanics. It never seemed to occur to any official contacting the appellee that he might be fitted for clerical employment. Total disability is not an abstract concept. It is not the same in all circumstances and under all conditions. It is a relative term, and whether it is present in a particular case depends upon the peculiar facts and circumstances of that case. The problem of determining whether it exists in a given case

is concrete and relative—not abstract. The mere fact that appellee may be able to engage in some light occupation requiring very little physical ·effort, or that he may work for short intervals at some character of employment, does not imply that he may not be totally disabled within the meaning of the World War Veterans' Act 1924, § 202, as amended (38 USCA § 473), and its regulations. To be sure, he may not claim total disability merely upon the ground that he is no longer able to engage in farming, yet if his disability renders it impossible for him to pursue continuously any gainful occupation for which he is physically and mentally qualified, that in law amounts to total disability. Under the facts disclosed by the record the case was one for the jury.

Affirmed.

WILBUR, Circuit Judge, concurs.