## NICOLAY v. UNITED STATES.
### No. 395.

Circuit Court of Appeals, Tenth Circuit.
June 30, 1931.

Kenaz Huffman, of Denver, Colo. (Frank E. Gove, Luke J. Kavanaugh, and Sherman A. Sutliff, all of Denver, Colo., on the brief), for appellant.

Edward S. Ragsdale, of Washington, D. C. (William Wolff Smith, Gen. Counsel, United States Veterans' Bureau, of Washington, D. C., Richard A. Toomey, Regional Atty., United States Veterans' Bureau, of Denver, Colo., Lawrence A. Lawlor, of Washington, D. C., Ralph L. Carr, U. S. Atty., of Denver, Colo., and John G. Reid, Asst. U. S. Atty., of Hugo, Colo., on the brief), for the United States.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The appellant (plaintiff below) sued on a war risk insurance policy which had lapsed for nonpayment of premiums on May 2, 1919. His claim is that he was totally and permanently disabled on or before that date. At the conclusion of all the evidence, the court directed a verdict for the United States. The correctness of that ruling is the only question in the case. If there is no substantial evidence of total and permanent disability on or before May 2, 1919, the trial court was right; otherwise not. Woolworth Co. v. Davis (C. C. A. 10) 41 F.(2d) 342; Waddell v. Guthrie & Co. (C. C. A. 10) 45 F.(2d) 977; Larabee Flour Mills v. Carignano (C. C. A. 10) 49 F.(2d) 151, and cases cited therein.

Disregarding conflicting testimony, the plaintiff's evidence developed substantially the following facts: He enlisted in May, 1917, and went overseas in April, 1918. He suffered the exposures incident to active service both in this country and abroad. He had an attack of bronchitis in March, 1918; his cold and cough did not leave him, and he was compelled on occasions to fall out while on forced marches. He was gassed on September 26, 1918, and the next day received a shrapnel wound in the arm and was evacuated for hospital treatment. His arm remained in a cast until a day or so before his discharge on March 10, 1919. He returned to his home on a farm in Kansas, and did a little farm work that summer and fall. He was not strong, had a cough, raised mucous and blood, and his doctor suspected the existence of tuberculosis, and prescribed rest and wholesome food. His doctor testified he was not then able to do "steady, all-day, hard work." In 1920 he took vocational training for about ten months; he then attempted to look after chicken incubators, but the work was too heavy. In January, 1922, his lungs were X-rayed by Dr. Owen, an X-ray expert and a witness for plaintiff, and the findings summarized as "chronic, active tuberculosis of the left apex." Dr. Owen believed him to be then totally disabled. Following the advice of his doctors, he went to New Mexico,

and in March, 1923, his lungs were again X-rayed by Dr. Owen, with a finding of "chronic, probably inactive, tuberculosis of the upper left lobe." At that time, Dr. Owen did not believe him to be permanently and totally disabled. He returned to New Mexico, and later came back to his home in Kansas. He did little or no work until 1925. In 1925 he worked at manual labor for a contractor for about eight months, but his condition was such that he was off from one-third to one-half the time. (In his statement to his succeeding employer, he says he worked for Maxwell & McBride from August 31, 1924, to August 20, 1925.) On September 2, 1925, he made written application to the Topeka Railway Company for a job as bus driver, and represented that he was in fair health and had never had a chronic disease, and specifically that he had never had consumption. He secured the job applied for, and worked for that company from September 15, 1925, to December 31, 1926. His work was irregular, running from two to seventeen hours a day, and he did not work every day. The undisputed records disclose that during those sixteen months he worked 3,626¼ hours, an average of approximately eight hours a day, including Sundays. In five of the months he worked more than 275 hours; in nine he worked more than 240 hours; in thirteen he worked more than 200 hours; and of the other three months (including the partial months at the beginning and ending of the employment) he worked 149½ hours in one, 142¼ hours in one, and 140 hours in one. There is no evidence that he was favored in this work by either his employer or his fellow employees, although he testified that he was compelled to call for relief many times, and that all during this period he ran a temperature, had pains in his chest, and a cough accompanied by spitting. During the first six months of 1927, he drove a bus between Kansas City and Topeka, but only worked about a third of the time. He was a fourteen-hour bed patient at a government hospital from July, 1927, until early in 1929. He was a filling station attendant the last half of 1929, but worked only four or five days a week; he was in California for about two months, and then returned to the government hospital, where he now is.

There is substantial evidence that he was a tubercular when he was discharged from the army. There is little doubt that from the middle of July, 1927, he has been a sick man. The question is not, however, his present condition; the question is, What was his physical condition on or before May 2, 1919? Evidence as to his condition since is pertinent, but only as it bears upon his condition while his policy was in force. The plaintiff's right to recover depends upon whether or not he was permanently and totally disabled in May, 1919; the fact that he was then in the early stages of tuberculosis is not conclusive, for we are not required to close our eyes to a fact known to most mankind, and that is that many men and women are now doing their daily tasks who have at one time been so afflicted.

Two factors must be considered, the totality of the disability and its permanence. Treasury Department Regulation 20, issued March 9, 1918, under the authority of section 13 of the War Risk Insurance Act (40 Stat. 399), defines total disability as "any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation."

This definition is couched in understandable language, and we are aided in construction by many authorities. This court has decided that, while "substantially gainful occupation" means any occupation, as contradistinguished from the prewar occupation of the insured, Runkle v. United States (C. C. A.) 42 F.(2d) 804, it must be an occupation which the insured is by nature fitted for, Barksdale v. United States (C. C. A.) 46 F.(2d) 762. See, also, United States v. Cox (C. C. A. 5) 24 F.(2d) 944; United States v. Rasar (C. C. A. 9) 45 F.(2d) 545. It has also been held that the totality of the disability is not conclusively disproven by the fact that the insured was employed for a period after the policy lapsed. United States v. Eliasson (C. C. A. 9) 20 F.(2d) 821; United States v. Cox (C. C. A. 5) 24 F.(2d) 944; United States v. Sligh (C. C. A. 9) 31 F.(2d) 735; United States v. Acker (C. C. A. 5) 35 F.(2d) 646; Hayden v. United States (C. C. A. 9) 41 F.(2d) 614; Malavski v. United States (C. C. A. 7) 43 F.(2d) 974; United States v. Meserve (C. C. A. 9) 44 F.(2d) 549; United States v. Phillips (C. C. A. 8) 44 F.(2d) 689; Ford v. United States (C. C. A. 1) 44 F.(2d) 754; United States v. Cole (C. C. A. 6) 45 F.(2d) 339; United States v. Rasar (C. C. A. 9) 45 F.(2d) 545; United States v. Godfrey (C. C. A. 1) 47 F.(2d) 126; Carter v. United States (C. C. A. 4) 49 F.(2d) 221. Back of these authorities are two reasons: The regulation reads that it must be "impossible" to follow "continuously" any substantially gainful occupa-

tion. An insured who is able to work only spasmodically, with frequent interruptions or change of jobs made necessary by his condition, cannot be said to be able to work with substantial continuity. Again, the word "impossible" must be given a rational meaning; it cannot fairly be said that it is "possible" for an insured to work because, under the stimulus of a strong will power, it is physically possible for him to stick to a task, if the work is done at the risk of substantially aggravating his condition. United States v. Acker (C. C. A. 5) 35 F.(2d) 646; United States v. Phillips (C. C. A. 8) 44 F.(2d) 689; United States v. Cole (C. C. A. 6) 45 F.(2d) 339.

Like any other question of fact, the subsequent employment may be of such duration, and be of such a nature, that it conclusively refutes any idea that the insured might have been permanently and totally disabled prior to and during the employment. United States v. Barker (C. C. A. 9) 36 F.(2d) 556; United States v. Rice (C. C. A. 9) 47 F.(2d) 749; United States v. Harrison (C. C. A. 4) 49 F.(2d) 227; United States v. Le Duc (C. C. A. 8) 48 F.(2d) 789; Ross v. United States (C. C. A. 5) 49 F.(2d) 541. These cases are in accord with the principles of the long list of cases cited above holding the question to be for the jury; they do no more than to apply the further settled principle that, " 'when the testimony of a witness is positively contradicted by the physical facts, neither the court nor the jury can be permitted to credit it.' American Car & Foundry Co. v. Kindermann (C. C. A. 8) 216 F. 499, 502; Missouri, K. & T. Ry. Co. v. Collier (C. C. A. 8) 157 F. 347, cert. denied 209 U. S. 545, 28 S. Ct. 571, 52 L. Ed. 920. Cases from many jurisdictions are gathered in a note in 8 A. L. R. 798, supporting the proposition that uncontradicted evidence which is contrary to physical facts should be disregarded. Judgments cannot and should not stand if they are entered upon testimony that cannot be true." Woolworth Co. v. Davis (C. C. A. 10) 41 F.(2d) 342, 347.

No hard and fast rule can be laid down to the effect that, if the insured works a certain length of time, he cannot recover. The nature of the work done, the circumstances under which it is done, the character of work the insured is equipped to do, and perhaps other circumstances, all enter into the equation. While the rule may be difficult of application, it is nevertheless a simple one, and it is that the question of the totality and permanence of the disability is a question of fact for the jury, if the evidence is such that reasonable men may differ as to the answer.

In this case we are of the opinion that there was evidence from which a jury might properly have found that the insured was totally disabled on May 2, 1919; there was some evidence that he was then an active tubercular, and the record discloses what is coming to be a matter of common knowledge, that active tuberculars should have complete rest. But, in addition to the disability being total, it must be permanent. If the insured had suffered a broken leg on May 1, 1919, or had contracted the scarlet fever on that day, he would have been totally disabled while his policy was in force; but, unless he disregarded the advice of his doctors, no one would say that such a disability was permanent.

The same regulation defines permanent disability . as follows: " 'Total Disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it."

Unless the plaintiff has produced some substantial proof that it was reasonably certain, on or before May 2, 1919, that his condition of total disability was one that would continue throughout his life, the case must be affirmed. We cannot find any such substantial evidence in the record. If, for the moment, we disregard the evidence as to the succeeding years, we have at best an insured in the early stages of tuberculosis. It is a matter of common knowledge that many such incipient tuberculars respond readily to the simple treatment of rest and nourishment; the activity is arrested, and, while there probably always will be a susceptibility of recurrence, they are able to, and do, live out their lives following gainful occupations. On the other hand, there are some that do not respond to treatment, and their condition is incurable from the start. The burden of proof is upon the plaintiff; if his evidence leaves it a mere matter of speculation as to the permanence of his condition in May, 1919, he cannot recover. Atchison, T. & S. F. Ry. Co. v. Toops, 281 U. S. 351, 50 S. Ct. 281, 74 L. Ed. 896. In Blair v. United States (C. C. A. 8) 47 F.(2d) 109, 111, Judge Kenyon said, in affirming a judgment against an insured: "For a court to find under this evidence that prior to March 31, 1919, appellant was totally and permanently disabled would be a mere guess, unsupported by any substantial evidence." But if we consider, as we must, the evidence of the succeeding years, it seems to

us to be clear that his condition in May, 1919, was not a hopeless one. In 1922, following the advice of his doctors, he went to New Mexico, and in March, 1923, an X-ray photograph was interpreted by plaintiff's expert as indicating a present inactivity. That his condition was then arrested is borne out by later events. Disregarding the eight months or a year he worked for the contractor in 1924–25, and the six months he worked as a stage driver in 1927, and his contradictory statements which affect the weight of his testimony, the record discloses that he held a steady job as a bus driver for nearly sixteen months, averaging approximately eight hours a day, including Sundays, and that each month of that period he worked a substantial part of the time.

While there must and should be a liberal contruction of this statute and the contracts made under it; and while it is unfortunate that the plaintiff permitted his policy to lapse, we are of the opinion that, if the jury had found that the plaintiff was permanently and totally disabled on or before May 2, 1919, the verdict would not have found substantial support in the record. United States v. Barker (C. C. A. 9) 36 F.(2d) 556; United States v. Rice (C. C. A. 9) 47 F.(2d) 749.

The judgment of the court is therefore affirmed.