**HIRT v. UNITED STATES.**

No. 438.

Circuit Court of Appeals, Tenth Circuit.

Jan. 26, 1932.

M. Ralph Brown, of Albuquerque, N. M., for appellant.

Richard A. Toomey, Insurance Atty., Veterans' Administration, of Denver, Colo. (Hugh B. Woodward, U. S. Atty., and Gilberto Espinosa, Asst. U. S. Atty., both of Albuquerque, N. M., William Wolff Smith, Gen. Counsel, U. S. Veterans' Bureau, and Bayless L. Guffy, Atty., U. S. Veterans' Bureau, both of Washington, D. C., and W. F. Cheek, Atty., U. S. Veterans' Bureau, of Albuquerque, N. M., on the brief), for the United States.

Before LEWIS and McDERMOTT, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge.

Hirt brought this action against the United States to recover permanent disability benefits on a war risk insurance policy issued to him while a soldier in the World War. All the facts necessary to a recovery are stipulated, except the alleged total and permanent disability. He was discharged from the Army on April 20, 1919. His premiums were paid up to and including April, 1919, and it is conceded that he has been totally and permanently disabled since November 20, 1924. The only question is, therefore, Was he totally and permanently disabled from May 30, 1919, the date his insurance lapsed?

At the close of plaintiff's case, the trial court, on motion of the government, directed a verdict in its favor. Hirt appeals.

The court in so doing stated that Hirt undoubtedly had a severe case of influenza while in the army, and was in the hospital a long time; that the only evidence on which the jury could say he was totally and permanent–

ly disabled is his own testimony that his physical condition to-day is the same as when he left the army; and that, while he was undoubtedly sick when discharged, he had not proved he had tuberculosis at that time; that he followed his usual occupation for five and one-half years after his discharge from the army.

Plaintiff's clinical record while in the service is inconclusive. For example, it shows his first admission to a government hospital September 19, 1918, diagnosis, influenza, condition on completion of case, recovery; that he had been sick for three days, cold, cough, sore throat, headache. "Lungs normal, a few moist, bronchial rales." A later card shows he entered a hospital December 1st of the same year. Final diagnosis rheumatic fever, acute. "Lungs clear, no rales, no dullness." That on March 4, 1919, he was admitted to the hospital for "arthritis, chr. mult." Symptoms, arthritis in the hips, knees, and ankles. Nothing said about his lungs. Again on March 31, 1919, the record shows a diagnosis of arthritis, chronic, multiple, cause undetermined. "Condition on the completion of case, good. * * * Lungs negative."

Plaintiff testified on his own behalf that his sickness started in August, 1918, while overseas and a few days after he had camped in the mud and rain; that he felt pains and aches all over. He went to the infirmary, was put to bed, and later moved to a base hospital. The doctors stated he had flu, he coughed, and had pains in the chest. He later reported back to his company, but in November grew worse, claimed he had rheumatism, and went to a hospital again, where he remained until the 25th of November. He was then sent to a casual camp, hardly able to walk. Felt very sick, began to cough, and lost more weight. A short time after he had a high temperature, and the doctor told him his lungs were in bad shape. He was put in the hospital from about the 1st of December, 1918, until January. Was an invalid until he was sent home to Camp Dix, N. J., and put to bed in a base hospital. The doctors told him there was not anything wrong; that his chest would clear up if he went home, slept in the fresh air, and took it easy for four or five months. Next he was sent to Camp Grant and discharged. At this time he had a thumping feeling in his chest and was coughing. Same feeling as he has now, although at the present time there is more pain. Went to work in a coal mine with his father three weeks after his discharge, and averaged two days a week, the same as the other miners,

until November, 1924. Also tried harvesting, but had to give it up. Received some help from his fellow workmen.

In 1919 saw a Dr. Warner, who advised him to go to bed; that he was to be examined later, but failed to report to the doctor, and did nothing more until 1922, when he was again examined. Says he was 15 pounds underweight, and running a slight temperature. Again refused to report to a doctor. State health board advised him to come to Springfield, Ill., for an examination, but he ignored the letter, and did nothing more until September, 1924, when, on the advice of a friend, he called upon a patent medicine doctor, who found he had a high temperature, and suggested he go home and go to bed. Went to St. Louis, and was examined by a Dr. Singer in November, 1924, who X-rayed him and stated he was in a serious condition and suggested a sanitarium. Condition this time the same as when he was discharged. Later he went to the government hospital in Kentucky, where he remained a year and a half. Then went home and has not been in hospital since.

When he first went home after being discharged, the doctor told him that his tuberculosis would be all right in six months, if he had plenty of fresh air and rested.

His witness, Dr. Singer, who seems to be well qualified, testified he examined Hirt in November, 1924, found bronchial breathing, rales in left upper lung. In the right upper there was harsh vessicular breathing with increased whisper and rales. X-ray plates showed marked involvement in his right lung. Every evidence to support a diagnosis of pulmonary tuberculosis. At that time he had tuberculosis of both lungs, upper portion. He was not able to follow a substantially gainful occupation continuously. Taking into consideration his condition at that time, assuming that he was a well man when he entered the Army in June, 1918, and his clinical record while in the army, in Dr. Singer's opinion, it was "probable" the tuberculosis resulted from the influenza and sickness he had while in the army. It was his "impression" his pulmonary tuberculosis was of many years' standing, but it was impossible to state definitely the date of its onset.

Dr. Harris of Albuquerque, in answer to a hypothetical question based on plaintiff's summary of the evidence and his own examination of plaintiff made only a few days before trial, and after reading Dr. Singer's affidavit, stated the plaintiff had advanced pulmonary tuberculosis, "presumably" since he

had influenza in the army, and in addition rheumatism. Could not say definitely whether plaintiff's condition developed in the army or a coal mine. This witness further testified that, following the influenza epidemic of 1918, there was a very noticeable increase in lung trouble, and that the influenza motivated the tuberculosis, and yet "there were thousands of people who were in this same condition, as disclosed by the record, and who got well in the army."

The other evidence is immaterial to this discussion.

The two outstanding points of plaintiff's evidence are: That he worked more or less continuously as a coal miner from about three weeks after he returned from the service, up to the time he was examined by Dr. Singer in 1924, averaging 100 days a year, the same as his fellow employees, and the lack of any certainty in the medical testimony as to Hirt's condition at the critical date, to wit, May 30, 1919.

Giving the plaintiff's evidence the most favorable consideration that the jury might have been warranted in putting upon it, was it sufficient to justify a verdict that the plaintiff was both totally and permanently disabled on May 31, 1919, within the definition?

■ We recognize the rule that these policies should be liberally construed in favor of the soldier. Nevertheless, the emphatic language of the definition of total and permanent disability must be given its usual meaning. There must be proof of two essential facts; namely, that at the critical date it was "impossible for the disabled person to follow continuously any substantially gainful occupation." And, granting that there is total disability, that "it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it."

■■ The evidence might justify a finding that plaintiff had tuberculosis in some form at the time he was discharged from the Army, or shortly thereafter, and grew progressively worse up to November 20, 1924, when it is conceded he was totally and permanently disabled. But no one testified he was totally and permanently disabled, or actually had tuberculosis at the critical date. Against any such assumption is the fact that he worked for considerable periods of time as a coal miner, a most harmful occupation for a man in his condition, and his own lack of concern for his health, as shown by his failure to follow the advice of the doctors. This is very persuasive that at the time he went to work in the mine his malady was not incurable. The proof is insufficient to support a finding that it was reasonably certain that his disability would continue throughout his life. It is just as probable that by following the regime indicated for a consumptive he would have recovered. If so, plaintiff cannot recover, because we take notice of the medical fact that very often tuberculosis, in its early stages, at least, is curable.

Nicolay v. U. S. (C. C. A.) 51 F.(2d) 170, and United States v. Sligh (C. C. A.) 24 F. (2d) 636 and Id. (C. C. A.) 31 F.(2d) 735, are pressed upon our attention. In the former a directed verdict for the government was upheld, although there was positive evidence that Nicolay was gassed while in France, received a serious wound in the arm, and at the time of his discharge from the army was tubercular, and not able to do steady, hard work.

In the Sligh Case, supra, there was positive testimony by a medical witness that Mr. Sligh had been unable to do any work since September, 1918, while he was still in the army, and prior to the date of his alleged total and permanent disability. In United States v. Barker, 36 F.(2d) 556, 559, the same court (C. C. A. 9th) stated that: "Not without hesitation we sustained the right of plaintiff to recover in the Sligh Case."

We are of the opinion that there is no evidence to sustain the one essential fact which a jury would be required to find in order to sustain a verdict for plaintiff.

Many years ago the Supreme Court in Improvement Co. v. Munson, 14 Wall. 442, at page 448, 20 L. Ed. 867, said: "Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party"—thus doing away with the rule that a case must go to the jury if there is a scintilla of evidence produced by the party upon whom the burden of proof is imposed. That this is still the rule in the federal courts, see Gunning v. Cooley, 281 U. S. 90, at page 94, 50 S. Ct. 231, 74 L. Ed. 720.

Bearing in mind, therefore, that the trial judge saw and heard the witnesses, and the lack of any positive medical evidence of plaintiff's condition previous to 1924, we do not feel justified in disagreeing with the trial court.

The judgment is affirmed.