### BIRDSELL v. UNITED STATES.
### No. 8950.

District Court, D. Colorado.
July 17, 1933.

W. Penn Collins and J. H. Richard, both of Denver, Colo., for plaintiff.

John G. Reid, Asst. U. S. Atty., of Hugo, Colo., and Richard A. Toomey, Chief Atty., Veterans' Administration, of Denver, Colo., for the United States.

SYMES, District Judge.

This is an action on a war risk insurance policy by the plaintiff, George R. Birdsell, who enlisted in the U. S. Army September 21, 1917, and was honorably discharged May 11, 1919. He took out a war risk insurance policy which, according to statement of plaintiff's counsel, was in force until May 31, 1919. The date of expiration does not appear in the complaint. By stipulation the case was tried to the court without a jury; and now, at the end of the plaintiff's evidence, defendant's motion for a directed verdict requires the court to view the evidence most favorable to the plaintiff, against whom it is desired a verdict be directed, and from that evidence and the inference reasonably and justifiably to be drawn therefrom, determine whether under the law a verdict might be found for that party. Mt. Adams & E. P. Inclined Ry. v. Lowery (C. C. A.) 74 F. 463. Therefore, the only question is: Was the plaintiff totally and permanently disabled on or before the date his policy lapsed for nonpayment of premiums in this case, May 31, 1919?

After some training in this country, plaintiff went "overseas" with his outfit, an artillery regiment. Upon arrival in Liverpool, England, he was hospitalized with diphtheria, was sick two weeks, and after a convalescent period of two weeks returned to his outfit. Thereafter he saw a great deal of service in the front line and, according to his service record, performed full duty until after the Armistice. He was No. 1 man on his gun squad; testifies that at times after continuous firing he became sick and dizzy, and had to fall out; that on his arrival home he was discharged from the army on the date mentioned, and did some work on his father's farm.

About a year later he came to Denver and took a course in a barber school for six months, and returned to his home in Kansas in July, 1920, and held one job continuously as a barber for four years. He then worked for another employer, Mr. Close, for three years, or until 1927. He came to Denver again, and according to his testimony, did not try for a job for nearly a year. He returned home in May, 1929, and barbered for a man named Boling for six months, and says he was discharged because of the fainting fits described herein. He visited Denver again for two months in the fall of 1929, and again returned home and bought an interest in a barber shop.

According to his testimony, which is corroborated, he has been subject to fainting or dizzy spells ever since he left the army. These occur at infrequent intervals but are becoming worse. He states that at times he goes for several months without an attack; that they come on without warning; and that on occasions he had fainted while at work and in the street. The first definite date given for any fainting spell was in June, 1923, when he fell over unconscious in the street.

According to the evidence, these spells have the characteristics of epilepsy, such as biting of his tongue, frothing at the mouth, and a glassy, staring expression. There is evidence of medical attention received at various times, none of which seems to have helped.

None of the doctors called in his behalf state he was at any time totally and permanently disabled. Dr. Collins of Denver examined him the day before the trial, and states that physically he was "not far from normal." Dr. Aldridge examined him once in 1928, and also saw him on the day of trial. He says he looked weak and underweight. Dr. Reeves, who had known him most of his life, testified that when he examined him in 1927 his diagnosis was shell shock, but that his temperature, pulse, and blood pressure were within normal limits, vision and hearing normal, and that there was nothing the matter with his nose, throat, sinuses, gastric, intestines, or lungs.

Plaintiff testified his average earnings since the war have run around $700 a year. In his applications for compensation he stated he was earning $100 a month as a barber.

The motion must be granted for two reasons: First, there is no evidence that the plaintiff at any time was totally and permanently disabled. None of his doctors so testified, and the physical facts are to the contrary. He has been continuously and gainfully employed as a barber, with the exception of one or two short periods of time, since 1920. During that time he has earned wages which, while not munificent, represent a livelihood.

It is argued that due to these fainting spells he was unable to hold a permanent job; that customers of the shops did not want to be shaved by a man subject to epilepsy. This argument is not convincing, in view of the

fact that he held one job for four years, and another for three years, and is now operating a shop of his own. But granting he is, as claimed, unable to earn his living as a barber, there is no showing he is unsuited for any of the other means of livelihood open to a man of his condition of health and education.

 Second, even if he is now, or has been for some years totally and permanently disabled, there is no evidence that that condition existed on May 31, 1919. Evidence of illness and disability since that time is only material as it throws light upon the alleged total and permanent disability of that date. His good war record of continuous and hard service throughout without any interruption refutes any such claim. Temporary fatigue or dizziness after a particularly hard bit of service at the front is no criterion, but was to be expected as part of the game. There is not a scintilla of evidence of any epilepsy at the critical date. The court may take judicial notice of the fact that many men in various walks of life, unfortunately afflicted with epilepsy, are earning a living. Partial disability is not sufficient, it must be both total and permanent, and be such as to render it *impossible* for plaintiff to have followed continuously *any* substantially gainful occupation as of May, 1919.

The Wood Case (Wood v. U. S.), 28 F. (2d) 771 (D. C.), is said to be on all fours with this. Wood, an epileptic, was admittedly totally and permanently disabled at the time of the trial. His epilepsy, of the grand mal and petit mal type, came on without warning, and was more or less constant, two or three major attacks a month, although he sometimes went as long as six weeks without any. The minor attacks were more frequent, but less violent.

Judge McDermott in finding for the plaintiff, states that epilepsy is not necessarily a total disability; that where the attacks were infrequent, such as one every four or five months, they were not disabling. He points out that government witnesses stated they knew of no job that plaintiff could hold. He holds, of course, that if one is able to pursue any gainful occupation there can be no recovery, and that liability will not be imposed simply because the insured cannot hold a particular class of employment, or do the same work he did before the War.

The attacks Wood was subject to were of greater violence and frequency than in the case at bar. Birdsell was able to hold jobs for several years, and often went several months without an attack.

A leading case in this Circuit, applicable here, is Nicolay v. U. S., 51 F.(2d) 170, holding that subsequent employment may be of such duration and of such a nature as to conclusively refute any idea that the insured may have been permanently and totally disabled prior to and during the employment in question. See, also, U. S. v. Leroy Harrell (10th C. C. A.) 66 F.(2d) 231, decided July 3, 1933.

The motion for a directed verdict in favor of the defendant should be granted, and judgment entered for the defendant with costs.

It is so ordered.