## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. HALLIBURTON.
### No. 877.

Circuit Court of Appeals, Tenth Circuit.
Dec. 12, 1933.

Richard K. Bridges, of Tulsa, Okl. (Randolph, Haver, Shirk & Bridges, of Tulsa, Okl., on the brief), for appellant.

Philip Kates, of Tulsa, Okl., for appellee.

Before LEWIS and BRATTON, Circuit Judges, and SYMES, District Judge.

LEWIS, Circuit Judge.

This is a suit brought by appellee as the named beneficiary of a life insurance policy in the sum of $12,000 that had been issued to her husband by appellant, a New York corporation. Appellant plead self-destruction within one year after the issue of said policy as a defense. Self-destruction, sane or insane, within one year from the date of issue is not a risk assumed by appellant under the policy. After both parties had rested, the court overruled appellant's motion for an instructed verdict. That ruling is the only error assigned.

Counsel for appellee insists that this court cannot consider the error assigned, because the certificate to the bill of exceptions does not state that all the evidence adduced at the trial is therein contained. Neither the certificate nor the bill of exceptions contains an express statement to that effect. However, we are of opinion that certain entries contained in the bill of exceptions sufficiently show that it contains all of the evidence. The following authorities hold that the form of that showing is not material. Gunnison County Commissioners v. Rollins, 173 U. S. 255, 261, 262, 19 S. Ct. 390, 43 L. Ed. 689; Clyatt v. United States, 197 U. S. 207, 220, 25 S. Ct. 429, 49 L. Ed. 726; Crowe v. Trickey, 204 U. S. 228, 235, 236, 27 S. Ct. 275, 51 L. Ed. 454; Stinson v. Business Men's Accident Ass'n (C. C. A. 10) 43 F.(2d) 312, 314.

The material facts are these: Appellee's husband, the insured, registered at the Mincks Hotel in Tulsa, Oklahoma, about mid-afternoon on October 14, 1931, under an assumed name, but he told the clerk his right name, which the clerk wrote in pencil on the registration card. The insured had registered before at the above hotel and also at another Tulsa hotel in the day time, sometimes under an assumed name. The bellboy took insured to the seventh floor room that had been assigned to him. The day was quite warm, and the bellboy raised the windows about a foot, lowered the shades, and brought some ice at insured's request. The bellboy testified he did not know whether any of the screens in the room were up.

Insured called his office a short time before his fatal injury and talked to Dan Holmes, an employee. Holmes said insured talked in a very clear tone of voice, and asked him if there were any calls or any matters that he needed to attend to personally. There were none, and insured then inquired about Holmes' child who had been named for insured. Insured said, "I will see you tomorrow."

Shortly after insured was taken to his room he fell or jumped from a window striking the sidewalk inside the curb line. His right leg was almost severed from hitting the-

awning which extended six feet from the building. He died in the hospital.

The windows in the room were twenty-seven inches above the floor and forty-two inches wide. The lower sash and screen of the window when raised were twenty-five inches from the sill. Insured was five feet five or six inches tall. A diving expert testified that if a person used any force to propel himself out of the window at that height it would be difficult for him to strike within twenty feet of the building line.

Appellant contends that it established the defense of suicide by the testimony of two eye witnesses, W. G. Graham and O. M. Lions. Graham testified that he parked his car across from the Mincks Hotel on the afternoon in question; that he saw a man standing at an open window looking down on the street; that he seemed to brace himself; that he saw the man jump; that he came out head first and hit face downward. The witness said he went into the hotel and heard someone say the man's name was Halliburton. On cross-examination the witness said the man did not brace himself with his hands, and further testified:

"A. That is exactly the way I saw it. He came out head first. I didn't notice him jump out.

"The Court: You just saw him come out head first? A. Yes, sir.

"The Court: Did you see him when he started? A. Yes, sir.

"Q. (By Mr. Kates:) And he came head forward out of the window? A. Yes, sir.

"Q. That is all you saw? A. Yes, sir."

Lions testified that from across the street he saw a man looking out of a window on the seventh floor of the Mincks Hotel; that the window was up, but he did not remember whether the screen was up; that he glanced away and then saw the man come out head first; that he could not swear that the man jumped out of the window.

At the time of his death insured had over $5,000 cash to his credit and the net worth of his estate was over $18,000, according to the evidence.

There is a presumption of law that a death is not due to suicide but is accidental. The legal presumption disappears where the proof is such as to not leave room for any reasonable hypothesis but suicide. But where the facts are disputable or are of such a character that different minds might reasonably draw different conclusions therefrom, a question is presented for the determination of a jury. Frankel v. New York Life Ins. Co. (C. C. A. 10) 51 F.(2d) 933; Wirthlin v. Mutual Life Ins. Co. (C. C. A. 10) 56 F.(2d) 137, 86 A. L. R. 138; Mutual Life Ins. Co. v. Graves (C. C. A. 3) 25 F.(2d) 705.

Appellant relies principally on the testimony of a witness who positively said on direct examination that insured jumped from the window, and was equally positive in his testimony on cross-examination that he did not notice insured jump. The other eye witness could not say that insured jumped. No motive for suicide was shown. We are of opinion that the evidence does not conclusively show that insured's fatal injury was self-inflicted, but rather that the testimony, facts and circumstances are such that reasonable men might draw different conclusions therefrom. In the face of the presumption against suicide we hold that the issue whether insured's death was accidental or suicidal was properly submitted to the jury for determination.

Affirmed.