**UNITED STATES v. JOHNSON et al.**

**No. 941.**

Circuit Court of Appeals, Tenth Circuit.

April 19, 1934.

Will G. Beardslee, Sp. Asst. to the Atty. Gen. (C. E. Bailey, U. S. Atty., and A. E. Williams, Asst. U. S. Atty., both of Tulsa, Okl., and John Mock, of Washington, D. C., Atty. for Department of Justice, on the brief), for appellant.

C. E. Baldwin, of Tulsa, Okl., for appellees.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

This is a war risk insurance case. The appellees, as plaintiffs in the court below, recovered a judgment against the appellant, there defendant, from which this appeal is taken. The case was tried to the court and jury. Johnson is the insured seeking to recover upon the policy and Baldwin is his attorney. At the close of all the evidence the defendant interposed a motion for a directed verdict and judgment in its favor, which was overruled by the trial court and

an exception reserved, which brings to this court for review the question as to whether the trial court erred in failing to sustain the motion upon the ground that there was no substantial evidence to warrant the submission of the case to the jury, and the appellees in their brief affirmatively assent that this is the sole question presented.

Our attention has been personally directed to that part of the record purporting to contain the bill of exceptions. The record of what is purported to take place at the trial is denominated "Narrative Statement of Evidence." This might be an appropriate title in a cause on the equity side, but what occurs upon the trial of a cause in law and criminal cases when carried to an appellate court is known as a bill of exceptions, which is specifically provided for by 28 USCA § 776. At the conclusion of the so-called narrative statement, it does appear that the record was agreed upon by counsel for plaintiff and defendant, and that it was approved by and bears the signature of the trial judge. There is, however, no formal certificate of the trial judge that the record so presented contains all the evidence and that it is allowed and settled as such. We think, however, that there is perhaps enough appearing for this court to invoke the rule laid down in the case of Equitable Life Assur. Soc. v. Halliburton (C. C. A.) 67 F.(2d) 854, to find that the record here is sufficiently shown to contain all the evidence presented at the trial together with the exceptions, and to authorize this court, while condemning the manner in which the purported bill of exceptions is presented, to consider the issues presented upon the merits.

Plaintiff entered the military service on May 27, 1918, and was discharged February 14, 1919, and carried a $10,000 war risk insurance policy. A claim for the benefit thereunder was made and rejected, thereby establishing the jurisdictional disagreement. The insured paid no premiums upon the policy after his discharge, but by the period of grace the policy was extended thirty days thereafter. The insured contends that he became totally and permanently disabled on March 2, 1919. The claimed disability arose out of a stroke of paralysis which he suffered on the latter date affecting the muscles of his face and right side. He was attended immediately by a physician who was deceased at the time of the trial. The plaintiff was in a hospital at various times taking treatment. He was treated by three doctors, two of whom testified in his behalf. The

plaintiff testifies that after the stroke he was out in a couple of days, but that it was three or four months before he tried to work. He then became overseer of some men on bridge work where he performed services for two or three months, receiving as his compensation $4 per day. He then went to another place for two or three months, and returned to his first employment as overseer for three or four months. He had charge of culvert work later. In 1921 he went to Sand Springs and was overseer of men putting in a floor on a bridge which lasted from a month to two months. He then worked for his brother in doing team work in which he hired a man to drive and he was overseer. In this employment he remained a little over a year. The team and man earned $7 a day, out of which he took the expense and gave the man one-half of the net earnings. Some time in 1923 he went to Three Sands and worked until 1924 doing team work and then to Limon, where he remained until the latter part of 1926, almost three years, where he was teaming, with men running the team for him. He then went to Tulsa to work for his brother at Hale Station, where he remained until 1928, and was engaged in answering telephone calls, selling tires, and things like that, during probably half of the time receiving $3.40 per day. He was night watchman at Hale Station for a little fruit stand in 1929 or 1930 and drew $15 a week for his work about half of the time and $10 for the rest of the time.

Dr. Henderson, testifying in his behalf, stated that he had officially examined the plaintiff in 1926, although the plaintiff had complained in 1923 of a pain in the back and a twitching of the face. A blood test in 1926 seemed to denote paralysis or paresis, and that in his opinion the plaintiff could not work at the time he made the examination, and that since the treatment began the plaintiff had been growing gradually worse. On cross-examination the witness stated that in his opinion the plaintiff could have done light work in 1923, like overseeing, running a car, and things of that kind.

Dr. Card testified that he had known the plaintiff since the year 1919, at which time his face was paralyzed and that there was a twitching of the face caused by paralysis of the sixth nerve, which was not curable. The patient responded to his treatment, but later when he saw the plaintiff it was his opinion that the plaintiff would never get well, and that his condition would materially interfere with the discharge of his duties as a laborer.

Other lay witnesses offered testimony as to his physical condition, but they are of no further consequence than purporting to sustain the recital by the plaintiff of his own condition and activities at various times.

Testimony was also offered in behalf of the defendant by a witness who had employed plaintiff and paid him $4 per day, during which time he acted as other men serving in the same capacity. Six or seven years later this witness saw the plaintiff and did not observe anything different in his physical condition with relation to the time that he was employed. An exhibit of the defendant received in evidence shows that on October 4, 1921, the plaintiff made application for compensation in which he represented that he was a structural steel worker earning a wage of $12 a day before entering the service, and was then engaged in running an auto salvage at which he worked steadily losing little time and averaging a wage of $3.50 a day.

From this cursory synopsis of the record it is apparent that there is no substantial evidence which establishes the fact that the plaintiff became totally and permanently disabled during the life of the policy. His work record alone shows that he worked rather steadily at various occupations for a period from 1919 a short time after his stroke, up to 1930, all of which is inconsistent with the theory of total disability. But, if this should be passed upon the theory of work being intermittent and not sufficiently sustained, and that therefore the requirements of total disability are satisfied, there yet remains no substantial proof by expert testimony or otherwise that his condition of disability was permanent in 1919; but, on the other hand, the testimony of one of the physicians is that the plaintiff could have followed some occupation in 1923. Neither is there testimony which tends to show that by the work which he performed there was any injury to his general health.

The principles applicable to a situation of this character are laid down in several decisions from our own circuit, among the more recent of which are Nicolay v. United States, 51 F.(2d) 170; Roberts v. United States, 57 F.(2d) 514; United States v. Perkins, 64 F.(2d) 243; United States v. Hammons, 66 F.(2d) 912; and United States v. Doublehead (C. C. A.) 70 F.(2d) 91, decided March 31, 1934. Under the rule of these decisions, it must affirmatively appear that there was a total and permanent

disability determinable as of the time the policy was in force and effect; it is likewise held that a substantially continuous work record at a reasonable wage which is not shown to have caused any injury to the general health of the insured nullifies the theory of total disability.

By the recent decision of the Supreme Court in Lumbra v. United States, 290 U. S. 551, at page 560, 54 S. Ct. 272, 276, 78 L. Ed. 492, we have a new guiding star in the consideration of cases of this class where the following language is used: "And in the absence of clear and satisfactory evidence explaining, excusing, or justifying it, petitioner's long delay before bringing suit is to be taken as strong evidence that he was not totally and permanently disabled before the policy lapsed."

It is pertinent here for the reason that, although the claimed disability occurred on March 2, 1919, suit was not instituted until July 26, 1932, over thirteen years later.

We think that there was no substantial evidence which justified the court in submitting the cause to the jury and that the motion for a directed verdict and judgment in favor of the defendant at the close of all the evidence should have been sustained.

For the reasons stated, the cause is reversed and remanded.