## UNITED STATES v. WATSON.
### No. 4538.

Circuit Court of Appeals, Fourth Circuit.

Nov. 6, 1939.

Young M. Smith, Atty., Department of Justice, of Washington, D. C. (Claud N. Sapp, U. S. Atty., of Columbia, S. C., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to Atty. Gen., on the brief), for appellant.

R. K. Wise, of Columbia, S. C., and Warren E. Miller, of Washington, D. C., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

## PER CURIAM.

This is an appeal in a war risk insurance case. The policy was continued in force until May 31, 1920; and the question presented is whether there is substantial evidence that insured became totally and permanently disabled before that date. We do not think that there is and that consequently there was error in denying the government's motion for a directed verdict. Insured, at his own request and prior to the completion of treatment, and against medical advice, was discharged from an army hospital on April 23, 1920, still suffering from a partial disability resulting from an injury to his left arm. Following his discharge he was given vocational training by the government. He was found to be suffering from tuberculosis in 1921 and was sent to the Veterans Hospital at Oteen, but left without being discharged after a stay of only about two months. He did not return to the hospital until 1927, when he was found to have tuberculosis in an advanced stage and has since been totally disabled.

The evidence probably justifies the inference that insured had tuberculosis in its initial stage prior to the lapse of the policy; but there is nothing upon which to base the conclusion that it was so far advanced at that time as to constitute total and permanent disability. It does not appear but that, if insured had continued to take the treatment which the government offered him in 1920 and 1921, the progress of the disease would have been arrested. Failure to take treatment does not, of course, estop an insured from claiming total and permanent disability; but it is a circumstance to be considered with other evidence in deciding whether a disease is shown to have reached such stage prior to that time as to constitute such disability. United States v. Horn, 4 Cir., 73 F.2d 770, 772; United States v. Lancaster, 4 Cir., 70 F.2d 515, 516. It is not sufficient that insured show that while the policy was in force he had tuberculosis which resulted in total and permanent disability after the policy had lapsed. He must show that during the life of the policy it was of such a character or had reached such stage as to be totally and permanently disabling within the meaning of the policy. Falbo v. United States, 9 Cir., 64 F.2d 948, affirmed 291 U.S. 646, 54 S.Ct. 456, 78 L.Ed. 1042; United States v. Diehl, 4 Cir., 62 F.2d 343; United States v. Stack, 4 Cir., 62 F.2d 1056; United States v. Brewer, 5 Cir., 97 F.2d 899; Eggen v. United States, 8 Cir., 58 F.2d 616. What was said in the Eggen case and quoted by us with approval in the Stack case is pertinent here, viz.:

"Courts recognize the fact that tuberculosis in its incipient stage is usually not an incurable malady. See Nicolay v. United States (C.C.A., 51 F.2d 170), supra; Hirt v. United States (C.C.A., 56 F.2d 80), supra. A finding that the insured was permanently disabled on October 1, 1919, or prior thereto, would not only be without substantial support in the evidence, but would necessarily be based solely upon speculation and conjecture. No one could determine from the evidence whether there were, during the life of the policy, condi-

tions not disclosed which then placed the insured in the class of incipient tuberculars who cannot be cured, or whether, subsequent to lapse, such conditions developed during the natural progress of the disease, or because of the failure of the insured to take treatment, or as the combined result of both the disease and such failure. The appellant calls attention to the fact that there was nothing in the contract requiring the insured to take treatment. That is true, but an insured may not convert a total. temporary disability existing before lapse into a total permanent disability by neglecting his condition after lapse, and the failure to take treatment may destroy whatever probative value death or permanency of disability occurring after lapse would otherwise have."

For the reasons stated, the judgment appealed from will be reversed.

Reversed.