**David PATRICK, Plaintiff,**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 787.**

United States District Court
W. D. Virginia,
Abingdon Division.

Sept. 8, 1961.

Robert T. Winston, Jr., and Greear, Bowen, Mullins & Winston, Norton, Va., for plaintiff.

Frank M. McCann, Asst. U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

This action was brought to review a decision of a Hearing Examiner of the Department of Health, Education and Welfare holding that the plaintiff, David Patrick, was not entitled to the establishment of a period of disability under § 216(i) of the Social Security Act, as amended (U.S.C.A. Title 42, § 416(i)), nor to disability insurance benefits under § 223 of said Act (U.S.C.A. Title 42, § 423). The Appeals Council of the Social Security Administration having denied a review of the Examiner's holding, that holding became a final decision of the Secretary of Health, Education and Welfare (hereinafter called the Secretary) and therefore reviewable by action in this court under § 205(g) of said Act (U.S.C.A. Title 42, § 405(g)).

On March 9, 1955 the plaintiff filed an application to establish a period of disability, alleging that he became unable to work on March 10, 1950. On September 3, 1957 he filed a supplemental application to establish his eligibility for disability insurance benefits alleging that he became unable to work in March 1950 because of arthritis and lung trouble. His applications were denied on August

1, 1956 and January 8, 1958. Plaintiff requested a reconsideration of the denials of his applications and the Bureau on reconsideration affirmed its prior denials and so advised the plaintiff by letter of April 23, 1958. Plaintiff then filed a request for a hearing before a Hearing Examiner and such a hearing was held at Middlesboro, Kentucky, on November 18, 1959. Evidence was taken and the Examiner found that the plaintiff was not entitled to the establishment of a period of disability or to disability insurance benefits and, as above noted, this finding has now become a final decision of the Secretary.

Section 205(g) of the Act (U.S.C.A. Title 42, § 405(g)) provides that in such a proceeding as this the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." And the definitions of "disability" in § 216(i) of the Act, applicable to the establishment of a period of disability, and in § 223(c), applicable to disability insurance benefits, are identical as applied to the facts of this case, namely, "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Section 216(i) adds blindness, as there defined, as an additional definition of "disability" for the purposes of that section but blindness is not involved in this case.

Without going into a detailed discussion of the somewhat complicated and interrelated sections of the Act which produce the result, it would seem to be sufficient for the purposes of this case to say that eligibility for the establishment of a period of disability or for disability insurance benefits depends upon a certain amount of "coverage" under the act and that, while there was some initial difference of opinion, the parties and the court now agree that the plaintiff last met these coverage requirements on September 30, 1950.

The issue to be decided here then is whether there is substantial evidence to support the Secretary's conclusion that the plaintiff was not on September 30, 1950 unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which could be expected to result in death or be of long-continued or indefinite duration.

There is considerable evidence in the case to the effect that the complainant is now, and probably has for some time been, under a "disability" within the meaning of the Act. But if he became so subsequent to September 30, 1950 he cannot prevail in this action.

The only evidence relied upon by the plaintiff to establish disability prior to September 30, 1950 is a medical report of Dr. Clark Bailey, undated but relating to an x-ray report of August 4, 1950, which quotes from the x-ray report as follows:

"Right lung: Infiltration is seen at the apex and in the first interspace, with a possible slight amount of infiltration in the second interspace, outer zone. The remaining shadows are probably within normal limits. Left lung: Slight infiltration is seen at the apex and in the first interspace, middle and outer zones. The remainder of the shadows are probably within normal limits. Impression: Chronic pulmonary tuberculosis moderately advanced, the degree of activity to be determined in the usual manner."

Plaintiff relies upon this report to show a disability as of September 30 1950. However, the disability as defined in the Act must be such as "can be expected to result in death or to be of long-continued or indefinite duration".

In a number of cases arising with respect to the War Risk Insurance Act, 38 Stat. 711, 40 Stat. 398, which contained a somewhat similar though not identical definition of "total disability", it was held that, in view of modern medical advances, a man with tuberculosis could not be deemed to be permanently disabled.

It was said in Nicolay v. United States, 10 Cir., 51 F.2d 170, at pages 172 and 173:

"* * * The plaintiff's right to recover depends upon whether or not he was permanently and totally disabled in May, 1919; the fact that he was then in the early stages of tuberculosis is not conclusive, for we are not required to close our eyes to a fact known to most mankind, and that is that many men and women are now doing their daily tasks who have at one time been so afflicted.

* * * * * *

"Unless the plaintiff has produced some substantial proof that it was reasonably certain, on or before May 2, 1919, that his condition of total disability was one that would continue throughout his life, the case must be affirmed. We cannot find any such substantial evidence in the record. If, for the moment, we disregard the evidence as to the succeeding years, we have at best an insured in the early stages of tuberculosis. It is a matter of common knowledge that many such incipient tuberculars respond readily to the simple treatment of rest and nourishment; the activity is arrested, and, while there probably always will be a susceptibility of recurrence, they are able to, and do, live out their lives following gainful occupations. On the other hand, there are some that do not respond to treatment, and their condition is incurable from the start. The burden of proof is upon the plaintiff; if his evidence leaves it a mere matter of speculation as to the permanence of his condition in May, 1919, he cannot recover."

See also Roberts v. United States, 10 Cir., 1932, 57 F.2d 514, 515; United States v. Rentfrow, 10 Cir., 1932, 60 F.2d 488; Smith v. United States, D.C.E.D. Ky.1933, 5 F.Supp. 475; Garrison v. United States, 4 Cir., 1932, 62 F.2d 41; United States v. McShane, 10 Cir., 70 F.2d 991, certiorari denied 293 U.S. 610, 55 S.Ct. 141, 79 L.Ed. 700, and cases there cited; and United States v. Sandifer, 5 Cir., 76 F.2d 551.

The court in the cases above cited construed the War Risk Insurance Act as requiring that the disability required under the act must be "permanent" and "permanent" was defined in the regulations issued under the act as "founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it." This is, perhaps, a somewhat more stringent requirement than the "physical * * * impairment which can be expected to result in death or to be of long-continued and indefinite duration" which must be shown under the Social Security Act. But in 1950 still further advances had been made in the control of tuberculosis than was the case when the decisions under the War Risk Insurance Act above cited were handed down in the early 1930's so that it does not seem that one could say in 1950 that a case of tuberculosis, not shown to have been in an especially aggravated condition, was a disability that might "be expected to result in death or to be of long-continued and indefinite duration." At the most it would appear that, as of September 30, 1950, the plaintiff was in a situation where he might become permanently disabled or die but might more probably, if he took the proper precautions, be cured within a reasonable time.

And in this particular case we know that, as far as the tuberculosis is concerned, he was cured within a reasonable time and that his present disability is due to causes that did not exist on September 30, 1950. Thus the record shows the next medical report on the plaintiff subsequent to that above mentioned to be of an admission to a hospital on July 5, 1951 with a diagnosis or "prob. pul tbc. MAC (bilateral upper lobe infiltration with cavitation, prob. inactive)".

A letter of September 5, 1957 from Dr. H. A. Kinser of the Lee General Hos-

pital in Pennington Gap, Virginia, states:

"X-ray on 10–9–53 showed slight diffuse fibrosis in the right lung. Left lung showed a small nodular infiltration in the 2nd interspace, otherwise clear. Recheck x-ray on 1–23–56 showed evidence of the aforementioned tuberculosis process involving the apical portions of both lung fields with a nodule on the left side as well as associated pleuritis on both sides. There is a greater degree of organization than noted forerly, particularly on the right side."

Another medical report of 9–30–57 contains the following:

"Pulmonary Tbc, moderately advanced probably inactive."

A letter from Dr. Daniel Gabriel of Pennington Gap, dated February 4, 1958, states:

" * * * He also is under preventative treatment for tuberculosis. X-rays taken in July, 1957 shows irregular desities in upper lungs above the anterior third ribs consistent with long standing moderately advanced tuberculosis, apparently healed. Review of x-rays dating back to 1950 indicate that he probably had active tuberculosis then which has gradually shown some healing."

A letter from Dr. William F. Schmidt dated September 29, 1958 states:

"Past History: His past history is interesting in that early in 1950 it was felt this man had tuberculosis. He was seen in consultation with Drs. Waterman and ——— (illegible) in 1951 and it was felt, after bronchoscopy, and examination of his sputum for acid fast bacilli and gastric washings, that he had inactive tuberculosis. One year later, he was again re-evaluation and at that time it was felt he had bilateral upper lobe pulmonary lesions which represented inactive tuberculosis. He was advised to return to

work at this time but was considered unsuited for mining.

\* \* \* \* \* \*

" * * * He was again x-rayed in 1956, at which time he then showed degenerative arthritic changes with sacralization of the left transverse process and evidence of a degenerative disc between L–4 and L–5 and was now having a sciatic type of pain and it was felt he had a lumbar disc. He was so treated with Steroids at this time *in spite of the fact he might have had tuberculosis.*" (Emphasis supplied.)

And in a later portion of Dr. Schmidt's report of September 29, 1958 it is said:

"Sputum on this gentleman have been negative for tuberculosis since 1951.

\* \* \* \* \* \*

"Report from the Lee County Health Department, Jonesville, Virginia, reveals this gentleman has inactive tuberculosis, moderately advanced, with no positive sputum cultures. The most recent one done was in 1957 and also one in 1958 which were all negative culturally as well as for smear."

Then there is another report from Dr. Schmidt in August, 1959, in which he says:

"The patient states that he was in fairly good health until 1950 at which time he was told that he had pulmonary tuberculosis of which he only had 3 days hospital therapy. He denies taking any drugs for his previously diagnosed TBC. He denies any symptoms referable to the tuberculosis. * * *

\* \* \* \* \*

"Impression: * * * 2) Rule out tuberculosis, by past history."

And the final report from Dr. Schmidt, under date of September 12, 1959, states:

"In 1950 he was felt to have tuberculosis, but this was never proved culturally. * * * "

"Final Impression: * * * 3) Bilateral apical fibrosis consistent

with inactive pulmonary tuberculosis.

\* \* \* \* \* \*

"At this time his tuberculosis is inactive. It has been inactive for 1 year. This offers no problem."

It is not known how long the plaintiff's tuberculosis may have been active but many years ago it was rated as inactive. (The reference to inactivity "for 1 year" in Dr. Schmidt's last report may be a typographical error as the tuberculosis was found to be inactive many years earlier.) It evidently cured itself without any special treatment. It does not seem that it could properly be said to have been at any time of such a character as to result in disability, within the meaning of the Act, which might be expected to result in death or to be of long-continued and indefinite duration.

It follows, therefore, that there is substantial evidence in the record to support the findings of the Secretary of Health, Education and Welfare and that the claim of the plaintiff must be denied.

An order will be entered accordingly.