## CARTER v. UNITED STATES.
### No. 3126.

Circuit Court of Appeals, Fourth Circuit.
April 13, 1931.

J. Crawford Biggs, of Raleigh, N. C. (J. M. Broughton, of Raleigh, N. C., on the brief), for appellant.

Davis G. Arnold, Associate Gen. Counsel, U. S. Veterans' Bureau, of Washington, D. C. (W. H. Fisher, of Clinton, N. C., U. S. Atty., and J. D. DeRamus, Regional Atty., of Charlotte, N. C., on the brief) for the United States.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

PARKER, Circuit Judge.

This is an action to recover disability benefits under a war risk insurance policy which was kept in force until July 31, 1919. Plaintiff contends that at that time he was totally and permanently disabled within the meaning of the policy and has since remained in that condition. At the conclusion of the testimony a verdict was directed for defendant, and from judgment thereon plaintiff has appealed. The question in the case is whether there was substantial evidence of total and permanent disability on the part of plaintiff commencing prior to July 31, 1919, and continuing to the institution of the action. We think that there was.

Plaintiff was injured in battle on November 8, 1918. On November 11, 1918, he was severely gassed. He was sent to a field hospital, and later, in April, 1919, was sent to the United States. Upon his arrival here he was taken to Green Hut Hospital in New York City, where he remained three or four weeks. From New York he was sent to Camp Lee at Petersburg, Va., at which time, according to his testimony, he was coughing and spitting blood and was unable to work. He was discharged from the army on June 2, 1919, and went immediately to his home in Zebulon, N. C. On his way home, he suffered a hemorrhage on the train. He was sick upon his arrival, blind in one eye, and suffering from a bad cough. Two weeks later, while helping load a bag of oats on a wagon, he suffered another hemorrhage. He was examined by a physician in September following and found to be suffering from tuberculosis.

Plaintiff attempted to work in a knitting mill in Zebulon during 1919, but testifies that he stopped because he was not able to do the work. In January, 1920, he went to work with the Durham Hosiery Mill in Durham, N. C., but testifies that he was not able to work, that he coughed badly and spat up lots of blood. A neighbor noticed his condition and sent him to the Red Cross for treatment. He was placed in the hospital at Durham, was sent from there to the North Carolina Tuberculosis Sanatorium, and from there to Government Hospital No. 26 at Greenville, S. C., where he remained for fourteen months. From Greenville, he was sent home as permanently disabled some time in the year 1921. Since then he has been for treatment to the government hospital at Oteen, N. C., on four or five different occasions, has been to the Naval Hospital at Norfolk, Va., and has spent eighteen or nineteen months in a hospital at Johnson City, Tenn. There is evidence that he did some work in the years 1926 and 1927, but he testifies that he was unable to work regularly and that on some days he could not work at all.

Plaintiff is a manual laborer and is uneducated. The evidence is that when he entered the army he weighed 185 or 190 pounds, but that at the time of his discharge he weighed only 135 or 140 pounds, which was his weight at the time of the trial. His statement as to his condition and as to his inability to work was corroborated by a number of witnesses, several of whom were physicians.

We think that this evidence was amply sufficient to take the case to the jury. Total and permanent disability within the meaning of these war risk insurance policies has been defined by a regulation promulgated by the Director of the Bureau of War Risk Insurance under section 13 of the War Risk Insurance Act 1917, as amended, 40 Stat. 555, and section 5 of the World War Veterans' Act, 43 Stat. 608, 38 USCA § 426. White v. U. S., 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530. This regulation is as follows:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability.

" 'Total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. Whenever it shall be established that any person to whom any installment of insurance has been paid as provided in Article IV on the ground that the insured has become totally and permanently disabled has recovered the ability to continuously follow any substantially gainful occupation the payment of installments of insurance shall be discontinued forthwith and no further installments thereof shall be paid so long as such recovered ability shall continue."

■ The word "continuously," as used in the regulation, must be given a reasonable interpretation, and we approve the rule laid down by the Circuit Court of Appeals of the First Circuit in Ford v. U. S. (C. C. A. 1st) 44 F.(2d) 754, 755, as follows: "We think the word 'continuously' should be construed as meaning with reasonable regularity; that it does not cover mere periods of disability such as are ordinarily incident to the activities of people in generally sound health. On the other hand, if such claimants are able to follow gainful occupations only spasmodically, with frequent interruptions due to disability, they are entitled to recover under the act."

■ The mere fact that a claimant may have worked for substantial periods during the time when he claims to have been permanently and totally disabled is not conclusive against him. The question is not whether he worked, but whether he was able to work, i. e., whether he was able to follow continuously some substantially gainful occupation without material injury to his health. Of course, the fact that a man does work is evidence to be considered by the jury as tending to negative the claim of disability; but the fact that he works when physically unable to do so ought not defeat his right to recover if the jury finds that such disability in fact existed. In the case of tuberculosis the patient is notoriously able to carry on for a while and do a substantial amount of work, but in most cases the attempt to carry on results in an aggravation of the disease frequently ending in the death of the patient. "To say that the man who works, and dies, is as a matter of law precluded from recovery under the policy, but that one who following the advice of his physician refrains from such work, and lives, is entitled to recovery, presents an untenable theory of law and fact, and emphasizes the necessity for a determination upon the facts in each case whether the man * * * was able to continuously pursue a substantially gainful occupation."

The rule applicable in such cases was well stated by Judge Kenyon, speaking for the Circuit Court of Appeals of the Eighth Circuit in U. S. v. Phillips (C. C. A. 8th) 44 F.(2d) 689, 691, as follows: "The government contends that the evidence of his working is so overwhelming that the court should have given a peremptory instruction to the jury. If the mere fact that the insured did work is conclusive evidence that he was not permanently and continuously disabled, then there should have been no recovery on this policy. The term 'total and permanent disability' does not mean that the party must be unable to do anything whatever; must either lie abed or sit in a chair and be cared for by others. The test laid down in the cases is well stated in United States v. Sligh (C. C. A.) 31 F.(2d) 735, 736, as follows: 'The term "total and permanent disability" obviously does not mean that there must be proof of absolute incapacity to do any work at all. It is enough if there is such impairment of capacity as to render it impossible for the disabled person to follow continuously any substantially gainful occupation.' Some persons, who are totally incapacitated for work, by virtue of strong will power may continue to work until they drop dead from exhaustion, while others with lesser will power will sit still and do nothing. Some who have placed upon them the burdens of caring for aged parents or indigent relatives, feeling deeply their responsibility and actuated by affection for those whom they desire to assist, will keep on working when they are totally unfit to do so. The mere fact that insured did work for Smith-McCord-Townsend Dry Goods Company and also for Montgomery Ward & Co. does not necessarily prove that he could follow continuously a gainful occupation." See, also, U. S. v. Rasar (C. C. A. 9th) 45 F.(2d) 545; Knight v. U. S. (D. C.) 45 F.(2d) 202; U. S. v. Meserve (C. C. A. 9th) 44 F.(2d) 549; Ford v. U. S. (C. C. A. 1st) supra; Malavski v. U. S. (C. C. A. 7th) 43 F.(2d) 974; Vance v. U. S. (C. C. A. 7th) 43 F.(2d) 975; U. S. v. Worley (C. C. A. 8th) 42 F.(2d) 197, 199, 200; U. S. v. Sligh (C. C. A. 9th) 31 F.(2d) 735; U. S. v. Cox (C. C. A. 5th) 24 F.(2d) 944; U. S. v. Eliasson (C. C. A. 9th) 20 F.(2d) 821.

■ And we think that under the evidence here the permanence as well as the totality of the disability was a question for the jury. A disability is permanent "whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it"; and where there is substantial evidence of such conditions, it is for the jury to say whether or not the disability in fact exists. Of course, not every case of tuberculosis constitutes a permanent disability; but where a case has continued as long as has that of the plaintiff here and has been attended with as many distressing symptoms, a reasonable man might well conclude that it would continue throughout the life of the insured.

■ In view of the arguments made before us in this and other cases as to the weight to be given to the testimony of physicians,

we think it well to observe that whether a disability caused by disease be of a permanent character or not is to be determined, not exclusively from the diagnosis made or the opinions given by physicians at the time of the onset of the disease, but by the history of the disease and all the other evidence in the case. A disease causing total disability may be thought at first to be temporary in character; but, if its subsequent history shows that it is reasonably certain to continue throughout the life of the insured, it is to be deemed permanent within the meaning of the policy. And while the testimony of physicians is entitled to great weight in determining the nature and probable duration of disease, it is not necessarily conclusive upon the issue as to whether the disability of an insured be total and permanent within the rule as stated. If the evidence taken as a whole is of such character, when viewed in the light most favorable to the plaintiff, as reasonably to lead to the conclusion that he was totally and permanently disabled, the issue is for the jury, to be decided by them in the light of all of the evidence, including the testimony of the physicians.

For the reasons stated, we think that the learned judge below erred in directing a verdict for defendant. The judgment will accordingly be reversed and the cause will be remanded for a new trial.

Reversed.