## UNITED STATES v. THOMAS.

### No. 3162.

Circuit Court of Appeals, Fourth Circuit. Oct. 13, 1931.

NORTHCOTT, Circuit Judge, dissenting.

Allen Crenshaw, Atty., U. S. Veterans' Bureau, of Washington, D. C., and Joseph

A. Tolbert, U. S. Atty., of Greenville, S. C. (William Wolff Smith, Gen. Counsel, U. S. Veterans' Bureau, Bayless L. Guffy and James C. Wilcox, Attys., U. S. Veterans' Bureau, all of Washington, D. C., on the brief), for the United States.

O. H. Doyle, of Anderson, S. C. (W. H. Thomas, of Columbia, S. C., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

Algie L. Thomas brought suit against the United States in the District Court demanding judgment for the sum of $57.50 per month from December 15, 1919, under the terms of a contract of war risk insurance for the sum of $10,000 issued to him in 1918 while a soldier in the United States Army. He claimed that he had become permanently and totally disabled as the result of injuries received by him in action on October 11, 1918, in France, so that he has been since unable to perform any work of any nature, but has been totally dependent for his livelihood upon compensation paid to him by the United States on account of his disability. No insurance premiums were paid after the soldier was discharged from the Army, and the policy lapsed on January 1, 1920, unless it matured as claimed by reason of the previous total and permanent disability of the insured. No such claim was made until twelve years later, when this suit was brought. The United States defended the action on the ground that the soldier did not become totally and permanently disabled during the life of the policy, and moved for a directed verdict for the defendant. This motion was overruled by the District Judge, and the case was submitted to a jury, who found a verdict for the plaintiff. From the judgment based thereon, the United States has appealed, and the substantial question for our consideration is whether there was sufficient evidence of permanent and total disability to justify the submission of the issue to the jury.

The soldier volunteered and was inducted into the Army on January 15, 1918, when he was twenty years of age. He was sent to France, where he participated in all the engagements of his regiment until he was wounded in battle near Verdun. A bullet struck him in the left wrist, cut off the middle finger of the right hand, and then passed through the face, causing a fracture of the right lower jaw. He was found on the battle field on the following morning, and thereafter he remained in various government hospitals in France and in the United States and received medical care and treatment until his discharge from the service on December 15, 1919, in poor physical condition, with an estimated disability of 40 per cent.

His condition at the time of trial on December 16, 1930, was shown by his family physician, who testified in substance that the left forearm was atrophied to some extent and was three-fourths of an inch smaller in circumference in the muscular portion than the right forearm; that some of the bones of the wrist and the third finger on the right hand had been removed; that the lower teeth of the right lower jaw were gone, and the bone was somewhat distorted, and consequently he did not have a great deal of chewing power on that side; and that he complained of a certain amount of nervousness. The doctor said that the chief disability was the atrophic condition of the left arm, which greatly handicapped its use, and he expressed the opinion that the patient could not continuously do any kind of manual labor requiring the use of the left arm, and that this condition would not improve. The doctor, however, said that the man was not totally disabled from following other occupations or lines of work.

The plaintiff on his own behalf testified that he is able to use his left arm only a little, for, if used for a day or so, the wrist swells, and it cannot be used again for quite a while. He has no teeth on the right side. The lower jaw is somewhat shorter, and his lower teeth do not meet the upper teeth properly. Consequently he can eat only soft foods. He is nervous as the result of his Army experience, cannot sleep much at night, and that affects his ability to work.

Upon his discharge from the government hospital, he got employment in cotton mills in South Carolina, the only kind of work he had ever done before the war. But he was not able to work as long as a week at a time continuously, because of the swelling of his arm. During several months he averaged about half time. He may have earned as much as $20 per month as contrasted with $15 per week prior to the war. Later the United States put him in vocational training as an automobile mechanic with automobile dealers at his place of residence in South Carolina, but he was unable to put in full time. While in training he made periodical reports showing the work performed day by day. Three of these re-

ports, rendered during the period from December 18, 1922, to February, 1923, show that he was occupied nearly every day in mechanical work, but he testified that, while he worked on each of these days, he did not work a full day at any time. When his arm troubled him, he did not work. He also had vocational training with other automobile mechanics at Union, S. C., for three or four weeks in January and February, 1924. He worked pretty regularly while there, but did not at any time work a full day. He left because he could not get along with one of his employers. The chief trouble was that the employer wanted him to work overtime, which he was unwilling to do.

The soldier also testified that he has been able to do a good deal of hunting and fishing since he left the Army. He is able to shoot a gun, but not very well, and can do the considerable amount of walking which hunting requires. He would be unable to hunt all the time steadily for as long as a week. He has been drawing compensation from the United States under the provisions of the World War Veterans' Act (38 USCA § 421 et seq.) ever since he came back from the Army, except during the periods of vocational training when he drew vocational training pay. He married in 1920, and has three children. He has supported his family through the moneys paid him by the United States.

The testimony of four physicians, called as witnesses by the United States, was unanimously to the effect that, while the plaintiff had suffered permanent injuries in the loss of the middle finger of his right hand, in his left wrist, and in his jaw, the resulting disability was partial and not total. One of these witnesses doubted the ability of the soldier to follow such an occupation as that of automobile mechanic, requiring the good use of both arms; but all the doctors were agreed that many kinds of work of a substantially gainful character, such as telephone operator, salesman, manager of filling station, etc., were open to him.

The question for decision is whether this evidence was sufficient to take the issue of total and permanent disability to the jury. The Director of the Bureau of War Risk Insurance, acting under the authority of section 13 of the War Risk Insurance Act, as amended by Act May 20, 1918, 40 Stat. 555, has promulgated Regulation XI in conformity with the act which defines total and permanent disability in the following terms:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability.

"'Total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. Whenever it shall be established that any person to whom any installment of insurance has been paid as provided in Article IV on the ground that the insured has become totally and permanently disabled has recovered the ability to continuously follow any substantially gainful occupation the payment of installments of insurance shall be discontinued forthwith and no further installments thereof shall be paid so long as such recovered ability shall continue."

■ This regulation has been approved and interpreted in numerous decisions, and among others by this court in Carter v. U. S., 49 F.(2d) 221. In that case there was evidence tending to show that the soldier had contracted tuberculosis prior to the lapse of his policy, and had suffered with it continuously thereafter, although he had done some work from time to time. It was held that the case should have been submitted to the jury upon the issue of total and permanent disability. Judge Parker pointed out that the Regulation XI must receive a reasonable interpretation; that the word "continuously" should be construed as meaning with reasonable regularity, and that the mere fact that a claimant may have worked for substantial periods would not of itself conclusively show that he was not then totally and permanently disabled. The question is, not whether an insured worked, but whether he was able to work—that is, whether he was able to follow continuously some substantially gainful occupation without material injury to his health.

■■ The insured, relying on this and similar rulings, contends that his occasional labors as mill hand and automobile mechanic are not necessarily incompatible with total and permanent disability. With this contention we agree, but nevertheless we think that, when the testimony is viewed in the light most favorable to the soldier, drawing all inferences in his favor that are fairly deducible from the facts, it is not reasonable

to conclude that he was totally and permanently disabled in 1920 when his policy lapsed. It is indeed certain that he has suffered a permanent injury in the service of his country, and is now laboring under a permanent disability of a substantial character; and, while the matter was not free from doubt at the trial, there was evidence from which a jury might have reasonably found a permanent and total disability on his part to do manual labor requiring the constant use of both hands and arms. But it must be borne in mind that total and permanent disability is not merely the inability of the insured to follow his pre-war occupation; he must be disabled from following "any substantially gainful occupation." United States v. Golden (C. C. A.) 34 F. (2d) 367, 370; United States v. Law (C. C. A.) 299 F. 61, reversed on other grounds 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401; Blair v. United States (C. C. A.) 47 F.(2d) 109; United States v. Barker (C. C. A.) 36 F.(2d) 556; Nicolay v. U. S. (C. C. A.) 51 F.(2d) 170. The serious disability from which the insured suffers undoubtedly furnishes the basis for the rating under which he properly receives compensation from the United States. But as pointed out by the court in United States v. Golden, supra, ratings for purposes of compensation are immaterial in an action by a soldier against the United States for permanent and total disability under a war risk insurance policy; and, even under the statute relating to compensation, a loss of one hand or of one foot alone does not entitle the claimant to a rating of total and permanent disability. 38 USCA § 473. The claim of the insured does not fail because of intermittent efforts on his part to engage in two-handed occupations, but rather because he offered no substantial evidence to show that he is unable to do the kind of work which a one-armed man can successfully perform.

We do not overlook the fact that, in addition to the injuries to the left arm, the right middle finger, and the jaw, the plaintiff has suffered from nervousness, loss of sleep, and inability to eat hard food, and doubtless these afflictions have affected his ability to work. Nevertheless there was no showing at the trial that all of the injuries combined made it impossible for him to follow with reasonable regularity *any* substantially gainful occupation. It may be that such evidence is in the possession of the insured; but, from the evidence offered to the court, it would appear that the insured has made no attempt to take up any calling except two-handed ones, and this failure on his part must be contrasted with the testimony of all the physicians in the case, including that of his own doctor, which shows, in accordance with the common knowledge open to all, that there are a number of occupations open to a partially crippled man. We are constrained, therefore, to hold that the evidence was not sufficient to warrant the submission to the jury of the issue of total and permanent disability. The Supreme Court in Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 233, 74 L. Ed. 720, has recently reiterated the rule that in the federal courts "a mere scintilla of evidence is not enough to require the submission of an issue to the jury; * * * in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed."

The judgment of the District Court must therefore be reversed.

NORTHCOTT, Circuit Judge (dissenting).

I am of the opinion that under the decision of this court in the Carter Case, 49 F. (2d) 221, there was in this case ample evidence to take the case to the jury.