**McHAM v. UNITED STATES.**

Civ. No. 941.

United States District Court
W. D. South Carolina, Spartanburg Division.

Nov. 15, 1949.

Charles C. Moore, Spartanburg, S. C., Horace L. Bomar, Spartanburg, S. C., for plaintiff.

Oscar H. Doyle, U. S. Atty., Anderson, S. C., Walter H. Hood, Asst. U. S. Atty., Greenville, S. C., for defendant.

WYCHE, Chief Judge.

This is an action for insurance benefits provided for by the National Service Life Insurance Act of 1940, as amended, 54 Stat. 1008, 38 U.S.C.A. §§ 801–818. Plaintiff's husband, who served honorably in World War II, designated plaintiff as the beneficiary in his policy of insurance. Premiums were regularly paid on the insurance through July 31, 1945. The insured died May 22, 1947. The principal issue is whether the insured was continuously totally disabled on and after August 1, 1945, until the date of his death. If he was so disabled, the payment of premiums was waived and the plaintiff is entitled to recover. If he was not so disabled, the insurance lapsed.

I find the facts specially and state separately my conclusions of law in the above cause as follows:

Findings of Fact.

Marcus Iberry McHam was born June 7, 1902, and served honorably in the United States Navy from July 19, 1919, until he was honorably discharged on July 20, 1921. Subsequently, during World War II, he volunteered for duty with the Navy.

He entered active service on November 23, 1942, and was honorably discharged on June 22, 1945, after having served approximately twenty-three months in the Pacific Theatre.

Effective January 1, 1943, Marcus Iberry McHam was granted National Service Life Insurance in the amount of $10,000, and Verona T. McHam, his wife, was the designated beneficiary of said insurance (Policy No. N 7-789-358). The monthly premium called for by said insurance was $8.70, per month and the premiums paid were sufficient to carry said insurance to August 1, 1945.

Prior to his departure for overseas duty in the spring of 1943, Marcus Iberry McHam was in good health, was energetic, and apparently strong and robust; while serving in the New Hebrides Islands of the Pacific, he developed a chronic cough with attendant shortness of breath which appeared to get worse as time passed; about April, 1944, McHam and the 57th C. B. Battalion, to which he was attached, were transferred to Manus Island; McHam visited "sick bay" often on Manus Island and was treated for his cough and inability to breathe properly, but he appeared to get worse, sometimes vomiting after coughing, and often was unable to sleep; the Battalion doctor on Manus Island prescribed a sedative to quiet his nerves and help him sleep; on one occasion, McHam was "off duty" for a period of thirty days, with the approval of the doctor, because of his condition of ill health.

McHam returned to the west coast in March, 1945, and subsequently was at home on a 30-day leave; his cough was worse and he was lacking in energy, and was troubled by his inability to breath properly; he was discharged from active duty on June 22, 1945, and returned to his Spartanburg home; he had lost weight between the 30-day furlough and his discharge, and his cough continued to bother him a great deal; he was nervous, lacking in energy and spent most of his time at home "lying around", and resting; his cough and attendant gagging got progressively worse, and within a short period of time he developed severe stomach pains which caused his stomach to become hard and knotty; he lost approximately twenty-five pounds between his furlough in 1945 and his death in 1947.

McHam was employed as a baker, more or less regularly, between July, 1945, and December, 1946, and drew a salary of from $40 to $55 per week; he did not work for several weeks during this period; to those who observed his work, he appeared to be working under great difficulties; he had a severe cough, was weak, could not lift objects from the floor, and, after staying on the job for a while, he would be exhausted and would have to lie down; he spent most of his time between working hours in bed, or resting in some other way.

When McHam finally consulted a doctor in December, 1946, he was in very poor condition; he had harsh sounds in his left chest, an enlarged, tender liver, and cancer (carcinoma) of the lung which had spread to the liver; shortly thereafter he was admitted to a Veterans' Hospital and died on May 22, 1947, of carcinoma of the lung with metastis to the liver.

Carcinoma is a slow growing, insipid type of cancer; according to the medical testimony in this case, McHam was cancerous in June, 1945, when he was discharged from the Navy; symptoms of cancer of the lung, among others, are coughing, shortness of breath, loss of weight and lack of energy, which symptoms McHam had long before his discharge, and before the payment of his monthly insurance premuims was discontinued.

According to the undisputed medical testimony, McHam was unable to work after his discharge from the Navy, and such work that he did was detrimental to his health.

Marcus Iberry McHam was totally disabled upon his discharge from the Navy in June, 1945, and such disability was continuous until his death. Such continuous total disability commenced while McHam's insurance was in force under premium-paying conditions, prior to insured's sixtieth birthday, and continued for a period of more than six months.

## Conclusions of Law.

Under the regulations promulgated by the Veterans' Administration, pursuant to the National Service Life Insurance Act, total disability is defined as "any impairment of mind or body which continuously renders it impossible for the insured to follow any substantially gainful occupation". While no cases have been cited which interpret this regulation arising under the National Life Insurance Act of 1940, it will be noted that the above definition of total disability is, for all practical purposes, the same was promulgated under the War Risk Insurance Act of World War I.[1] Therefore, cases decided under the War Risk Insurance Act are helpful in arriving at a proper conclusion in this case.

The Government's only defense in the instant case was that the insured worked for a substantial period of time after August 1, 1945, the date to which premiums were paid. The Government did not offer any witnesses to refute the plaintiff's witnesses or to take issue with the medical opinion of the two doctors who testified for the plaintiff.

█ The test is not whether an insured worked, but whether he was able to work. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Thomas, 4 Cir., 53 F.2d 192; Carter v. United States, 4 Cir., 49 F.2d 221; Harrelson v. United States, 4 Cir., 94 F.2d 182. As stated by Judge Parker in the Carter case, supra [49 F.2d 223]: "The mere fact that a claimant may have worked for substantial periods during the time when he claims to have been permanently and totally disabled is not conclusive against him. *The question is not whether he worked, but whether he was able to work, i. e., whether he was able to follow continuously some substantially gainful occupation without material injury to his health.* Of course, the fact that a man does work is evidence to be considered by the jury as tending to negative the claim of disability; but the fact that he works when physically unable to do so ought not to defeat his right to recover if the jury finds that such disability in fact existed." (Emphasis added.)

The same principal is stated in United States v. Smith, 2 Cir., 68 F.2d 38, 39, as follows: "The test is not what the appellee actually did or what one might be reasonably expected to do when in need of means for a livelihood. But the test is whether the insured was able to work and did work after the lapse of the policy without impairment to his health. If he did so at peril to his health, he may still be regarded as permanently and totally disabled."

The testimony in the instant case shows that McHam worked under great difficulties, and, after hours, could only lie around and rest. However, he attempted to carry on, and to earn a livelihood for his family. He had no other source of income. All the while he was suffering with an extremely bad cough, had abdominal pains, was losing weight, and was extremely weak. The testimony of the two doctors who testified is to the effect that McHam was working to the detriment of his health. In their considered opinion, he should not have been working. They would not have advised him to work had they been consulted earlier. One of the doctors testified that work, in a case of this kind, tends to weaken the victim, and to cause him to die sooner.

In this case I was impressed by the honest and forthright testimony of the witnesses for the plaintiff.

█ Unlike many of the War Risk Insurance cases, this is not a suit by an insured claiming total and permanent disability benefits while living. The insured is dead. He was killed by one of the most dreaded and deadly diseases known to our medical profession, namely, cancer. We know, therefore, that at some time previous

---

1. Under the War Risk Insurance Act, total disability was defined as "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation * * *." (TR 20 WR) See 54 S.Ct. 275.

to his death he became totally and permanently disabled, for he did not recover. Considering all the testimony, it is my opinion that he was continuously totally disabled on and after August 1, 1945, until the date of his death.

I conclude, therefore, that plaintiff is entitled to recover all benefits provided for under the National Service Life Insurance of her husband, Marcus Iberry McHam, the same as if premiums had been paid to the date of his death.

Counsel may submit proposed order for the entry of appropriate judgment accordingly.