**SAUER v. UNITED STATES.**

Civ. A. No. 5432.

United States District Court
E. D. Wisconsin.

Jan. 23, 1954.

---

10. Footnote 2, supra.

**138**

Michael D. Preston, Milwaukee, Wis., for plaintiff.

Howard Hilgendorf, Asst. U. S. Atty., Timothy T. Cronin, U. S. Atty., Milwaukee, Wis., for defendant.

TEHAN, District Judge.

This is an action to recover on a policy of national service life insurance, which lapsed prior to the death of the insured on account of non-payment of premiums, the issue being whether the insured was totally disabled on July 21, 1946 (at which time the policy we have found was still in effect).

Section 602(n) of the National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A. § 802(n), provides that

"(n) Upon application by the insured and under such regulations as the Administrator may promulgate, payment of premiums on such insurance may be waived during the continuous total disability of the insured, which continues or has continued for six or more consecutive months, if such disability commenced * * * (2) while the insurance was in force under premium-paying conditions, * * *. In the event that it is found that an insured is no longer totally disabled, the waiver of premiums shall cease as of the date of such finding and the policy of insurance may be continued by payment of premiums as provided in said policy: *Provided further*, That in any case in which the Administrator finds that the insured's failure to make timely application for waiver of premiums or his failure to submit satisfactory evidence of the existence or continuance of total disability was due to circumstances beyond his control, the Administrator may grant waiver or continuance of waiver of premiums: *And provided further,* That in the event of death of the insured without filing application for waiver, the beneficiary, within one year after the death of the insured or August 1, 1946, whichever be the later, or, if the beneficiary be insane or a minor, within one year after removal of such legal disability, may file application for waiver with evidence of the insured's right to waiver under this section. * * "

Section 602(r) of the National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A. § 802(r) provides that

"(r) In any case in which premiums are not waived under subsection (n) of this section solely because the insured died prior to the continuance of total disability for six months, and proof of such facts,

satisfactory to the Administrator of Veterans' Affairs, is filed by the beneficiary with the Veterans' Administration within one year after September 30, 1944, or one year after the insured's death, whichever is the later date, his insurance shall be deemed to be in force at the date of his death, and the unpaid premiums shall become a lien against the proceeds of his insurance: *Provided,* That if the beneficiary be insane or a minor, proof of such facts may be filed within one year after removal of such legal disability."

It has been stipulated by the parties [1] that the insurance policy was in full force and effect to and including June 20, 1946 by reason of premium payments thereon. The parties have further stipulated that the Veterans' Administration made a determination that the insured was totally disabled as of July 30, 1946, and that he died on September 28, 1946. The evidence shows that the premium due June 21, 1946 was not paid, but we find that the thirty-one day grace period provided by 38 C.F.R. Sections 8.14 and 8.15 kept the policy in effect to and including July 21, 1946. Within the statutory one year period following the death of the insured, the plaintiff beneficiary filed an application with the Veterans' Administration alleging total disability of the insured prior to the lapse of his insurance and continuing until his death on September 28, 1946, which application was disallowed by the Veterans' Administration.

It appears that the insured Harvey W. Stanley returned from military service on April 20, 1946. About three weeks after he returned, on May 11, 1946, he went to work at the Midwest Pottery Company as a full-time employee and remained there until the middle of July, at which time he went to work at National Car Loading Corporation, the same company where he had been employed at the time he entered military service. On July 2, 1946, the insured applied to the John Hancock Life Insurance Company for a policy of life insurance in the sum of $4,000, which policy was subsequently issued, and in fact was paid to the plaintiff upon the death of the insured. In the application for this policy Stanley stated that he was in sound health and was employed at the Midwest Pottery Company. The testimony of the insured's wife, the plaintiff, however, showed that at the time he came home from military service, one of the items he carried in his clothes was a box of aspirins, and that following such return home he suffered from headaches periodically and with increasing intensity, although he did not continue to carry a box of aspirins on his person.

On July 23, 1946, the insured struck his head on a machine which he was unloading from a truck. Within a few moments, however, he resumed his work and continued without interruption until July 30th. He did not go to work on July 30th, nor at any time thereafter until his death on September 28th. On July 30th, he went to see a physician at

**1.** "1. That on October 4, 1943, the Veterans Administration of the United States of America issued an insurance policy pursuant to the National Service Life Insurance Act, certificate No. 13235208, in the sum of Ten Thousand and 00/100 ($10,000.00) Dollars, payable in case of death of Harvey W. Stanley to his wife, Louise Ann Stanley, now Louise Ann Sauer.

"2. That the above stated policy of insurance was in full force and effect up, through and including June 20, 1946, by reason of premium payments thereon.

"3. That the insured, Harvey W. Stanley, died on September 28, 1946.

"4. That on September 10, 1946, an application for reinstatement of the above stated policy of insurance was prepared and submitted to the Veterans Administration.

"5. That the Veterans Administration has made a determination that the deceased Harvey W. Stanley was totally disabled as of July 30, 1946.

"6. That after the death of the said insured Harvey W. Stanley, the Veterans Administration was advised by letter from the plaintiff herein of her interest in claim to the proceeds of the aforementioned policy."

the "Industrial Clinic", complaining of headaches. At this time rest and some sedation for relief of pain was prescribed. On the following day he was examined again and stated that with rest his headache had abated. On August 2nd, a third examination was made, at which time he stated that his headaches were more frequent and more severe. On August 3rd, he was admitted to St. Luke's Hospital, and he remained there, with the exception of two days when he was home, until August 29th. He was examined daily. During the time he was in the hospital he continued to suffer intermittently from headaches, vomiting and "foggy" spells, and was treated on the presumption that he had suffered a possible neck strain in the alleged injury, although there was some suspicion at the time that he had a cerebral tumor. On August 29th, he was removed to the Milwaukee Hospital, where an exploratory operation was performed on September 3rd. From about September 13th and until his death on September 28th, he was in the Veterans' Hospital at Wood, Wisconsin. During this period a second exploratory operation was performed.

In making claim for the John Hancock insurance policy, the plaintiff stated that the cause of death was bronchopneumonia. A physician's statement submitted with such claim stated that the duration of the disease was from July 30, 1946 to September 26, 1946, while the death certificate, signed September 30, 1946, listed the immediate cause of death as broncho-pneumonia, duration 4 days, and the contributory cause as laceration and hematoma, multiple, base of brain, post-traumatic; duration: 2 months. Dr. Cleveland who performed the operations thought there was a brain tumor, and that the insured's condition was not related to the July 23rd injury, but he was unable to discover the tumor in his surgical explorations. It was his later impression that the autopsy showed death as being caused by traumatic hemorrhage.

It appears that shortly after the patient died, an autopsy was made by the pathologist at the Veterans' Hospital, who, upon a gross examination, felt that the outstanding phenomenon that he could see was a hemorrhaging in the area, and that that was the basic cause of death. Thus it was on that basis that the death certificate was issued, and application made for the proceeds of the John Hancock policy. However, subsequently when the area was studied in intimate detail and with numerous microscopic sections, it was clearly found to be a brain tumor so that eventually the original clinical diagnosis of Dr. Cleveland was substantiated.

Dr. Kuzma, a pathologist, testified that while he did not do the autopsy, he made a microscopic examination of about 20 to 25 sections of the area; that he found a brain tumor centrally located in the brain; that the portion of the tumor which he had for examination was almost spherical, a little less than one inch in diameter; that he did not believe this brain tumor could be the result of a blow to the head; that he did not find any injury which resulted from a blow on the head; and that from the size of the tumor and the cell type and determination of the rapidity of growth of the cells, he would estimate that the tumor had been present for a period of many months, and was in existence prior to July 20, 1946. He further stated that the brain tumor was the primary cause of death, and that in his opinion the patient was totally disabled on July 20, 1946, although the deceased probably had no knowledge that he had the tumor.

Dr. Van Hecke, a pathologist, testified that he had examined the file and specimens at Veterans' Hospital; that there was a letter in the file from Dr. Callender, Chief Pathologist, and Dr. Haymaker, Chief Neurologist, and that they made a diagnosis of spongy astroblastoma unipolare, a type of brain tumor, and that he, Dr. Van Hecke, agreed with this diagnosis. He further testified that while the original specimens showed very

indefinite gross findings, the microscopic sections very clearly showed the presence of the tumor cells, that it was not possible for a tumor of that nature to be caused by a single trauma, that it was a reasonable medical certainty that the tumor existed on July 20, 1946, and prior to that time, and that the underlying cause of death was a brain tumor.

The situation may be summarized as follows: Premium payments made by the deceased kept the policy in effect to and including June 20, 1946. He failed to pay the premium due June 21, 1946; however, the grace period provided by 38 C.F.R. Sections 8.14 and 8.15 kept the policy in effect thirty-one additional days, or through July 21, 1946. On and prior to the latter date, the insured had a brain tumor, although neither he nor any one else was aware of it at that time, and in fact it was not discovered until some time after his death. The Veterans' Administration has made a determination that the insured was totally disabled as of July 30, 1946, and plaintiff contends that this total disability existed for some months prior to that date and in any event on July 21, 1946, only nine days before the date fixed by the Veterans' Administration. There can be no doubt as to the disability on and after July 30, 1946, since the insured did not work at all subsequently to that date, and with the exception of a day or two was in the hospital from that time on to the date of his death on September 28, 1946.

The medical testimony is conclusive that if it had been known on July 21, 1946, or prior thereto, that the insured's headaches were caused by a brain tumor, surgery would have been recommended, and the insured hospitalized immediately. Under these circumstances, the insured would have been entitled to a waiver of premiums for his then known condition and total disability. There would be no question but what the insured was totally disabled within the definition of total disability found in the Code of Federal Regulations, Title 38, Chapter 1, Section 8.43. The definition referred to is as follows:

"Total disability as referred to in this paragraph is any impairment of mind or body which continuously renders it impossible for the insured to follow any substantially gainful occupation."

It is well settled that whether the insured was totally and permanently disabled within the meaning of the above definition on July 21, 1946, is a question for the jury. Carter v. United States, 4 Cir., 1931, 49 F.2d 221; Jensen v. United States, D.C.1950, 94 F. Supp. 468; Makowski v. United States, D.C.1952, 105 F.Supp. 575; Kerr v. United States, D.C.1951, 99 F.Supp. 953. It is also clear from a reading of the cases that his continuing to work during the nine days from July 21, 1946 until July 30, 1946, does not necessarily indicate that disability did not exist. As the Court said in Carter v. United States, 4 Cir., 1931, 49 F.2d 221, 223:

"The question is not whether he worked, but whether he was able to work, i. e., whether he was able to follow continuously some substantially gainful occupation without material injury to his health."

See also McHam v. United States, D.C.1949, 87 F.Supp. 84; Kerr v. United States, D.C.1951, 99 F.Supp. 953; Sims v. United States, D.C.1952, 101 F.Supp. 700; Makowski v. United States, D.C. 1952, 105 F.Supp. 575.

"The same principal is stated in United States v. Smith, 2 Cir., 68 F.2d 38, 39, as follows: 'The test is not what the appellee actually did or what one might be reasonably expected to do when in need of means for a livelihood. But the test is whether the insured was able to work and did work after the lapse of the policy without impairment to his health. If he did so at peril to his health, he may still be regarded as permanently and totally disabled.'" McHam v. United States, supra, 87 F.Supp. at page 86.

In the Makowski case, for instance, the insured was admittedly permanently and totally disabled from January 11, 1944, which was approximately five months prior to his discharge from the Army, the policy being in effect at that time to July 27, 1944, when the insured secured a job with the Murray Corporation of America as a general production assembler. The insured worked at this job until March 31, 1945. The insured admittedly was once again permanently and totally disabled from March 31, 1945, when he quit the job, until he committed suicide on May 21, 1946. Testimony was introduced to show that the insured was suffering from dementia praecox from the time he left the Army until he died. The Court held that the issue of the insured's disability was properly submitted to the jury and there was substantial evidence to support the jury's verdict that the insured was permanently and totally disabled for the purpose of waiver of premiums, even though he did work for a substantial period of time.

In the Kerr case, the evidence showed that the insured did work around the house from the time he returned from the Service, November 4, 1945, until the date of his death, November 10, 1946. The Court sustained the finding of the jury that the insured was totally and continuously disabled prior to March 31, 1946, and continuing until July 24, 1946, when it was admitted that he was totally and continuously disabled.

In the Sims case, the insured sustained a gun shot wound through his chest in line of duty on April 5, 1945. He was discharged from service on September 14, 1945, and the premiums on his insurance policy were paid through September 30, 1945, but not thereafter. He died on March 9, 1947. Upon his return home he was advised by his family physician that he was not physically fit to work. However, from February, 1946, until the last of January, 1947, he did work, although he was unable to work about half of the time because of pain in his chest, shortness of breath, severe headaches, dizziness and nausea. The work was due to economic necessity in spite of his health. The Court held that the work record of the insured did not preclude his beneficiary from recovering.

In the Carter case, plaintiff insured sought to recover disability benefits under a war risk insurance policy which was kept in force until July 31, 1919. In November, 1918, the plaintiff was injured in battle and severely gassed. He was sent to a field hospital and in April, 1919, was brought to a hospital in the United States. He testified that at this time he was coughing and spitting blood and was unable to work. On his way home following his discharge on June 2, 1919, he suffered a hemorrhage on the train. Upon his arrival home he was blind in one eye and suffering from a bad cough. Two weeks later he suffered another hemorrhage while loading a bag of oats on a wagon. In September, 1919, he was examined by a doctor and found to have tuberculosis. During 1919 the plaintiff attempted to work in a knitting mill but testified that he stopped because he was unable to do the work. In January, 1920, he worked for a hosiery mill but testified that he was unable to work and that he coughed badly and spat up lots of blood. A neighbor noticed his condition and sent him to the Red Cross. He was placed in a hospital where he remained for fourteen months. Some time in 1921, he was sent home as permanently disabled. Thereafter he was treated at hospitals on four or five different occasions and spent eighteen or nineteen months in one of them. During the years 1926 and 1927 he did some work but was unable to work regularly. The issue was whether the plaintiff was totally and permanently disabled prior to July 31, 1919, and continuing to the commencement of the action. The trial court directed a verdict for the defendant. Upon appeal the cause was reversed, the appellate court ruling that there was substantial evidence of disability and that the fact that the claimant may have worked during the period in question was merely

evidence to be considered by the jury as tending to negative the claim of disability.

In the McHam case, premiums on the insurance policy were paid through July 31, 1945. The insured died May 22, 1947. The issue was whether the insured was continuously totally disabled from August 1, 1945, until his death. Prior to his departure for overseas duty in 1943, McHam was in good health. While serving in the Pacific he developed a chronic cough and shortness of breath. He appeared to get worse as time passed and visited "sick bay" often, being treated for his cough and inability to breathe properly. Often he was unable to sleep. In March, 1945, he returned home. His cough was worse and he was lacking in energy and troubled by his inability to breathe properly. He was discharged from active duty on June 22, 1945. As time passed, he became progressively worse and began to develop severe stomach pains. Between July, 1945, and December, 1946, he was employed as a baker, more or less regularly, and drew a salary of $40 to $55 per week. He did not work for several weeks during this period and to those who observed him he appeared to be working under great difficulties. When he finally consulted a doctor in December, 1946, he was in poor condition, with harsh sounds in his left chest, an enlarged tender liver, and carcinoma of the lung which had spread to the liver. He was admitted to a hospital shortly thereafter and died on May 22, 1947 of carcinoma of the lung with metastis to the liver. The Government's defense in the case was that the insured had worked for a substantial period of time after August 1, 1945, the date to which premiums were paid. After discussing the testimony in the case the Court said, D.C., 87 F.Supp. 84, 86:

"The insured is dead. He was killed by one of the most dreaded and deadly diseases known to our medical profession, namely, cancer. We know, therefore, that at some time previous to his death he became totally and permanently disabled, for he did not recover. Considering all the testimony, it is my opinion that he was continuously totally disabled on and after August 1, 1945, until the date of his death."

The authorities we have cited appear to us to firmly establish the proposition (1) that the question of the total and permanent disability of an insured is for the jury, and (2) that a person may be totally and permanently disabled even though he is working full time.

The malady in the McHam case was cancer, in the Makowski case dementia praecox inducing suicide, in the Kerr case leukemia, in the Sims case gun shot wound, and the Carter case involved tuberculosis. Each of these diseases manifested itself in a degree severe enough to cause substantial periods of total disability, and then in each case there is a history of such abatement in severity as to induce men driven by "economic compulsion" to return to substantially full-time employment.

Some diseases of their very nature give strong objective evidence of their presence and advancement; others, equally serious or deadly, are more subtle and hence more insidious. The malady here, tumor of the brain, is of the latter type. In contrast to the veterans visibly affected by cancer, tuberculosis, leukemia, dementia praecox and trauma, we have a young veteran who has no warning of his peril which though unrecognizable to him is increasing day by day until on July 30th he is stricken never to return to work again.

However sharp the contrast may be between classes of diseases and the manner in which they evidence themselves, the essential question is whether the plaintiff has established by a preponderance of the evidence that the insured was totally and permanently disabled on and after the critical date. The peculiar nature of the disease we are concerned with—brain tumor—did not allow for the type of proof ordinarily

**· 144**

available in cancer or T-B cases, but the medical proof adduced compels a finding that the insured was suffering from a brain tumor on July 21, 1946, and had been for many months theretofore, that at that time he should have been hospitalized and given surgical attention. It has been conceded by the Government that he was totally disabled on July 30, 1946. We find that he was totally disabled on July 21st and for some time prior thereto, within the meaning of the definition provided by the regulations.

The plaintiff relies upon two other theories for recovery, (1) that continuous premium payments were made by direct remittance following the cessation of payments made by allotment from service pay; and (2) that the policy was reinstated in September, 1946, on the application of the insured for such reinstatement. The Court believes that in view of its opinion of the case, it is not necessary to consider plaintiff's additional theories of recovery.

The plaintiff shall prepare a judgment in accordance with the foregoing opinion.

